**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO, LOCAL 1345, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

No. 85–1378.

United States Court of Appeals, District of Columbia Circuit.

Argued May 13, 1986.

Decided June 27, 1986.

William J. Stone, with whom Mark D. Roth, Washington, D.C., was on brief for petitioner.

William R. Tobey, Attorney, Federal Labor Relations Authority, with whom Ruth E. Peters, Sol. and Steven H. Svartz, Deputy Sol., Federal Labor Relations Authority, Washington, D.C., were on brief for respondent. William E. Persina, Atty., Federal Labor Relations Authority, Washington, D.C., also entered an appearance for respondent.

Before MIKVA, EDWARDS and BORK, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This is an appeal from a decision of the Federal Labor Relations Authority ("FLRA" or the "Authority") dismissing an unfair labor practice charge brought by the American Federation of Government Employees ("AFGE" or the "Union") pursuant to the Federal Service Labor-Management Relations Statute (the "Labor Statute").[1] The FLRA concluded that the Army and Air Force Exchange Service, Fort Carson, Colorado ("AAFES" or the "Agency") did not commit an unfair labor practice by failing to provide, at the Union's request, information regarding two employees who had been dismissed from jobs within the Union's bargaining unit.

The Labor Statute requires federal agencies to furnish data "necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining."[2] The FLRA concluded that, even though the Union served as the employees' exclusive bargaining representative, the information requested by the Union was not necessary for its "representational function" because "the Union did not know the identities of, and was not asked to represent, the two employees concerning their disciplinary separations."[3]

The statement of the law upon which the FLRA relied is flatly wrong. In addition to pressing grievances for individual employees, AFGE represents all members of the bargaining unit who might be affected by management policies regarding terms and conditions of employment. The Union can hardly be expected to understand, evaluate or discuss management policies regarding employee discipline if management is unwilling to explain to the Union the circumstances surrounding the discharge of bargaining unit personnel. Moreover, the Union is properly concerned with its own status as the bargaining representative, which requires it to have access to information necessary to assess its responsibilities. In short, information concerning the dismissal of unit employees is clearly "necessary for full and proper discussion, understanding, and negotiation of subjects with the scope of collective bargaining" under the terms of the Labor Statute. We therefore reverse the decision of the FLRA.

There is a possibility that the Privacy Act[4] may render release of some or all of the requested information unlawful. The FLRA did not reach this issue; therefore, on remand, the Authority may determine whether disclosure of the requested information "would constitute a clearly unwarranted invasion of personal privacy."[5]

---

1. 5 U.S.C. §§ 7101–7135 (1982 & Supp. II 1984).

2. *Id.* § 7114(b)(4)(B).

3. *Army and Air Force Exchange Service, Fort Carson, Colorado,* 17 F.L.R.A. 624, 629 (1985) [hereinafter *FLRA Decision* ].

4. 5 U.S.C. § 552a (1982).

5. *Id.* § 552(b)(6).

## I. BACKGROUND

AFGE is the exclusive representative for AAFES employees at the Fort Carson Exchange and Pueblo Army Depot. Following rumors that two employees had been discharged from the Exchange Food Warehouse in August 1980, AFGE made several requests for information regarding the dismissals. At the time when these requests were made, AFGE did not know the identities of the employees.

On September 8, 1980, the president of Local 1345 wrote to the Agency requesting "all written data, including but not limited to, the circumstances surrounding the firing of two unit employees at the Ft. Carson Exchange Food Warehouse in August, 1980." [6] A few days later, at a meeting with the AAFES personnel assistant, Union representatives again asked for information regarding the discharges. They were informed that release of the information would violate the Privacy Act. AFGE then filed an unfair labor practice charge and the FLRA General Counsel issued a complaint alleging that the Agency had committed an unfair labor practice by refusing to supply the requested data to the Union.

On March 3, 1981, a hearing was held before an Administrative Law Judge ("ALJ"). At the hearing, the Agency finally revealed the identities of the discharged employees. The Agency submitted documents concerning the employees' discharges to the ALJ, who examined them *in camera*. The Union was denied access to these documents, although it did receive copies of the termination notices sent to the employees, minus all identifying information, which indicated that AAFES had discharged them after apprehension by the Military Police for theft.[7]

The ALJ concluded that the Agency's failure to furnish the requested information was not an unfair labor practice because release would have violated the Privacy Act.[8] The Privacy Act prohibits agencies from disclosing any records without the prior written consent of the person to whom the record pertains.[9] However, disclosures of information required by the Freedom of Information Act ("FOIA")[10] are excluded from the general prohibition of the Privacy Act.[11] FOIA, in turn, requires agencies to disclose records to the public unless the record falls into one of the exemptions enumerated in the statute.[12] The ALJ found the FOIA disclosure requirement inapplicable because he concluded that the requested information fell within FOIA exemption 6, which allows an agency to refuse to disclose

> personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy....[13]

In reaching his conclusion, the ALJ balanced the privacy interests of the employees against the public interest in providing the Union with the data. While recognizing that the Union has representational functions not only with regard to individual employees, but also with respect to the bargaining unit as a whole, the ALJ decided that those collective interests were outweighed by the individuals' privacy interests.

---

6. Letter from Mike Minnish, President, AFGE Local 1345 to S.W. Fogleman, General Manager, Rocky Mountain Area Exchange (Sept. 8, 1980), *reprinted in* Brief for the Federal Labor Relations Authority at C–4.

7. Advance Notice of Separation for Cause (Aug. 8, 1980 & Aug. 21, 1980), Final Decision of Separation for Cause (Aug. 19, 1980 & Aug. 28, 1980), *reprinted in* Brief for Petitioner Addendum B.

8. 5 U.S.C. § 552a (1982). The Labor Statute requires agencies to provide information only "to the extent not prohibited by law." *Id.* § 7114(b)(4).

9. *Id.* § 552a(b).

10. *Id.* § 552.

11. *Id.* § 552a(b)(2).

12. *Id.* § 552(a).

13. *Id.* § 552(b)(6).

The FLRA General Counsel filed exceptions to the ALJ's opinion, which was then reviewed by the Authority. The FLRA dismissed the claim under the Labor Statute and did not reach the Privacy Act issues. It found that the General Counsel had not shown that the data requested by the Union was necessary for its representational function within the meaning of section 7114(b)(4) of the Labor Statute, which provides:

> (b) The duty of an agency and an exclusive representative to negotiate in good faith under subsection (a) of this section shall include the obligation—
>
> ....
>
> (4) in the case of an agency, to furnish to the exclusive representative involved, or its authorized representative, upon request and, to the extent not prohibited by law, data—
>
> ....
>
> (B) which is reasonably available and necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining....[14]

The Authority drew the conclusion that the data was not necessary to the Union "[u]nder the particular circumstances of the instant case, where the Union did not know the identities of, and was not asked to represent, the two employees concerning their disciplinary separations...."[15]

## II. Discussion

■ The FLRA's principal explanation for upholding management's refusal to furnish information was that the Union did not know the identities of the discharged employees and had not been asked to represent them in pressing a grievance. The Authority concluded that, under these circumstances, the Union had no "representational function" to perform. We find the FLRA's decision to be wholly without basis in law, and, in addition, a somewhat extraordinary interpretation of the Labor Statute when considered in the light of the Union's legal responsibility to fairly represent all employees in the bargaining unit. It seems patently obvious, and beyond the slightest doubt, that information regarding the disciplinary dismissal of unit employees is "necessary" for a Union to fulfill its obligations as the employees' exclusive bargaining agent. We cannot comprehend the Authority's suggestion to the contrary.

Initially, we note that the FLRA's construction of section 7114 is far narrower than the terms of the statute itself. Section 7114 requires a federal employer to furnish the exclusive bargaining representative with data "necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining." This statutory mandate is perfectly consistent with the well-understood principle that, in collective bargaining,

> [t]he duty to request and supply information is part and parcel of the fundamental duty to bargain. The duty is not an additional negotiable subject matter of the bargaining process. The employer cannot make the subject of bargaining the submission of relevant data needed by a labor organization.[16]

Furthermore, it is well-settled in both private and public sector labor law that this obligation applies not only to information needed to negotiate an agreement, but also to data relevant to its administration.[17] The relevance of the requested data is con-

---

14. *Id.* § 7114(b)(4)(B).

15. *FLRA Decision,* 17 F.L.R.A. at 629.

16. *Saginaw Township Board of Education,* 1970 MERC Lab.Op. 127 (Mich.Empl.Relations Comm'n).

17. *See, e.g., NLRB v. Acme Industrial Co.,* 385 U.S. 432, 435–36, 87 S.Ct. 565, 567–68, 17 L.Ed.2d 495 (1967); *NLRB v. Truitt Manufacturing Co.,* 351 U.S. 149, 153, 76 S.Ct. 753, 756, 100 L.Ed.2d 1027 (1956); *National Weather Service, Silver Spring, Maryland,* 21 F.L.R.A. 455, 456 (1986) (information necessary for bargaining); *United States Equal Employment Opportunity Commission, Washington, D.C.,* 20 F.L.R.A. 357, 359 (1985) (data necessary to enable union to determine whether to process a grievance).

sidered on a case-by-case basis;[18] however, the employer's duty to provide the information must be evaluated in the context of the *full range* of union responsibilities in both the negotiation and the administration of a labor agreement. These principles have clear application in the instant case.

First, the Union represents potentially aggrieved employees. It is well-settled that section 7114 creates a duty to provide information that would enable the Union to process a grievance or to determine whether or not to file a grievance.[19] In addition, the Union is entitled to information relevant to its obligation to represent a unit employee subject to disciplinary treatment.[20] In order to fulfill this obligation, it is axiomatic that the Union must be able to inform employees of the procedures to which they are entitled and to communicate its willingness to enforce compliance with the bargaining agreement.[21]

Second, the Union represents *all* the members of the bargaining unit.[22] Often a policy established in connection with a particular personnel action may affect employees beyond those immediately involved.[23] Thus, even if the Union chooses not to pursue a particular grievance, the statute creates a duty for the Agency to provide information that is relevant to the Union's need to understand new policies or the application of old policies that may affect members of the bargaining unit. The policies AAFES applied in terminating the two

employees as a disciplinary measure are plainly germane to the Union's obligation to police and administer the labor agreement. As this court has recently stated:

> Decisions about what constitutes an unjust dismissal ... spills [sic] over to the rights and expectations of all unit employees.[24]

In addition, the circumstances surrounding disciplinary actions may also be relevant to bargaining proposals in future negotiations.

Third, the Union has a legitimate concern with its own status as the exclusive bargaining representative. It is entitled to information when the Agency takes an action that affects its role as exclusive representative. The Union cannot fulfill its obligation to fully represent all employees in the unit if it lacks information necessary to assess its representational responsibilities.

When all of these elements are considered—the individual discharges, the larger responsibility to all bargaining unit members and the Union's own institutional status—we conclude that information regarding the terminations was "reasonably ... necessary for full and proper discussion, understanding, and negotiation...."[25]

Under the circumstances of this case, the Union's request for "all written data" was descriptive enough to indicate what it had

**18.** *See, e.g., United States Environmental Protection Agency, Health Effects Research Laboratory, Cincinnati, Ohio,* 16 F.L.R.A. 52, 54 (1984).

**19.** *See, e.g., Department of the Navy, Portsmouth Naval Shipyard,* 4 F.L.R.A. 619, 624 (1980); *United States Customs Service, Region VII,* 10 F.L.R.A. 251, 253 (1979); *United States Customs Service and Houston Region,* 8 A/SLMR 1139, 1141 (1978).

**20.** *See, e.g., Internal Revenue Service, Western Region, San Francisco, California,* 9 F.L.R.A. 480, 493 (1982).

**21.** *Cf. Prudential Ins. Co. v. NLRB,* 412 F.2d 77, 84 (2d Cir.), *cert. denied,* 396 U.S. 928, 90 S.Ct. 263, 24 L.Ed.2d 226 (1969).

**22.** *See, e.g., National Treasury Employees Union v. FLRA,* 721 F.2d 1402, 1406 (D.C.Cir.1983).

**23.** *See, e.g.,* Cox, *Rights Under a Labor Agreement,* 69 Harv.L.Rev. 601, 625 (1956) ("The group interest is often involved to an equal degree when there is past damage to an identifiable individual.... Nor can adjudication of past rights be separated from rule making for the future. Both pertain to the interstices of the contract.").

**24.** *National Treasury Employees Union v. FLRA,* 774 F.2d 1181, 1188 (D.C.Cir.1985) (holding that a union's role in protecting the interest of the bargaining unit is not inherently restricted to pursuing grievances, but also may apply when an employee chooses to pursue a statutory appeal).

**25.** 5 U.S.C. § 7114(b)(4)(B) (1982).

in mind and to make plain the relevance of the information under the statute. Two unit employees had been discharged; in that context, there was no need for further justification of the request. At oral argument, counsel for the FLRA contended that the Union's request was overbroad; however, he conceded that the FLRA did not find that AFGE's requests were infirm for this reason. Moreover, the Agency did not ask for further elaboration or specification with respect to the Union's request, nor did it raise a claim of overbreadth before the Authority. There is simply no indication that overbreadth was the basis for the Authority's decision. Therefore, counsel's argument is nothing more than a *post hoc* rationalization that must fail upon assertion.

We reach no decision as to whether a release of any of the requested information might be unlawful under the Privacy Act. Because the FLRA's decision rested solely on its erroneous interpretation of the Labor Statute, it did not balance the relevant interests under the Privacy Act. The FLRA is free to take up these issues on remand.

█ In considering the effect of the Privacy Act upon the legality of AAFES' refusal to provide any data to the Union, the FLRA cannot *assume* that bargaining unit employees do not want Union representation merely because they have not specifically indicated a desire for such representation. When employees have indicated *nothing,* there is no basis for such an assumption, as distinguished from the situation when employees specifically reject Union assistance; in the latter case, the privacy concerns are much more explicit and more weighty. The absence of a request for representation may, on the other hand, merely reflect an employee's ignorance about his or her right to representation.

However, even if individual employees decline Union assistance, that does not preordain that AFGE is not entitled to any information. The Union has larger concerns than pressing individual employee grievances, which must be weighed against privacy concerns.[26] Moreover, in order to be exempt from FOIA disclosure requirements, release of personnel records must constitute "a clearly unwarranted invasion of personal privacy."[27] As we have previously held, this statutory language "tilt[s] the balance in favor of disclosure."[28] It may also mean that an agency is required to provide some information even if other information is protected. For example, an agency may have an obligation to furnish data on the announcement or application of a policy even if it need not disclose specific personnel files of employees who object to union access and whose privacy would be subject to unwarranted invasion if the data were released.

### III. CONCLUSION

For the reasons stated above, the decision of the FLRA is reversed and remanded. The information requested by AFGE is "necessary for full and proper discussion, understanding, and negotiation" within the meaning of section 7114, and the Agency had a duty to satisfy the Union's request. The Authority is free on remand to consider whether release is consistent with the Privacy Act.

*So ordered.*

**26.** *See American Federation of Government Employees, Local 1760 v. FLRA,* 786 F.2d 554 (2d Cir.1986).

**27.** 5 U.S.C. § 552(b)(6) (1982).

**28.** *See Getman v. NLRB,* 450 F.2d 670, 674 (D.C. Cir.), *stay denied,* 404 U.S. 1204, 92 S.Ct. 7, 30 L.Ed.2d 8 (1971).