**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

No. 361, Docket 86–4077.

United States Court of Appeals, Second Circuit.

Argued Dec. 5, 1986.

Decided Feb. 10, 1987.

See also, 2d Cir., 802 F.2d 47.

Joe Goldberg, Washington, D.C., Staff Counsel, American Federation of Government Employees, AFL–CIO (Mark D. Roth, General Counsel, American Federation of Government Employees, AFL–CIO, of counsel), for petitioner.

Robert J. Englehart, Atty., Washington, D.C., Federal Labor Relations Authority (Ruth E. Peters, Solicitor, Steven H. Svartz, Deputy Solicitor, Harold M. Sklar, Atty., Federal Labor Relations Authority, of counsel), for respondent.

Before FEINBERG, Chief Judge, and NEWMAN and MINER, Circuit Judges.

FEINBERG, Chief Judge:

The American Federation of Government Employees, AFL–CIO (the union), petitions for review of a Decision and Order of the Federal Labor Relations Authority (the Authority), holding that the Department of Health and Human Services, Social Security Administration (the agency), did not commit an unfair labor practice under the Federal Service Labor-Management Relations Statute (the Labor Statute), 5 U.S.C. § 7116(a)(1), (5) and (8), when the agency refused to furnish information requested by the union pursuant to section 7114(b)(4) of that statute.[1] The decision of the Authority is published at 21 F.L.R.A. No. 35 (Apr. 14, 1986). The union argues to us that the Authority should have employed the "presumptive relevance" doctrine, and required the agency to establish that the

1. Section 7114(b)(4) provides, in relevant part:

(b) The duty of an agency and an exclusive representative to negotiate in good faith under subsection (a) of this section shall include the obligation—

. . . . .

(4) in the case of an agency, to furnish to the exclusive representative involved, or its authorized representative, upon request and, to the extent not prohibited by law, data—

(A) which is normally maintained by the agency in the regular course of business;

(B) which is reasonably available and necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining; and

(C) which does not constitute guidance, advice, counsel, or training provided for management officials or supervisors, relating to collective bargaining....

information requested by the union was not relevant to subjects within the scope of collective bargaining. Alternatively, the union argues that the Authority erred in holding that the union did not sufficiently communicate to the agency its need for the information. We reject the union's first argument but agree with the second. Accordingly, we grant the union's petition for review, reverse the decision of the Authority and remand this case to it.

## I.

This petition involves four charges filed by the union against the agency that were consolidated and heard, on stipulated facts, by an administrative law judge (ALJ) in November 1984. The first charge involved the union's request for unsanitized copies of official time and attendance records for all employees in the agency's East New York branch office for the period of October 1, 1983 to March 13, 1984. Unsanitized documents are unedited and contain the identity of the employee who is the subject of the record or report. At the time of the request, the union represented 36 of the 42 employees in the East New York office. The second charge concerned the union's request for unsanitized copies of progress reviews and performance appraisals for all of the approximately 15 bargaining unit employees in the agency's Murray Hill branch office for the period of January 1, 1983 to March 15, 1984. Underlying the third charge was the union's request for unsanitized copies of progress reviews and performance appraisals for a group of claims representatives in the agency's Jamaica district office for the period of January 1, 1983 to March 20, 1984. At the time of that request, the union represented 104 of 115 employees in that office, including 21 or 22 claims representatives. The fourth charge involved the union's request for unsanitized copies of various documents bearing on work performance of claims representatives, including annual appraisals, desk and interview audits, quality review deficiency flags and weekly District Office Work Report (DOWR) statistics in the agency's Downtown district office for the period of January 1, 1983 to February 29, 1984. At the time of that request, the union represented approximately 75 employees in that office, including 11 claims representatives.

The communications between the union and agency officials were substantially the same in each case. Each request for information by the union was prompted by a complaint from a bargaining unit employee who felt that he or she had been treated unfairly by the agency. For example, at the East New York office the union's request was prompted by a complaint from a bargaining unit employee who was told by her supervisor that restrictions on obtaining sick leave might be imposed upon her. The union wanted the records in order to discover sick leave patterns, determine how employees were treated concerning excessive use of sick leave and decide whether to file a grievance. In each of the four cases, the agency asked the union to supply more information concerning the issue underlying the request. In response, the union referred the agency to Article 24 of the collective bargaining agreement, which deals with the filing of grievances, section 7114 of the Labor Statute and section 7103(a)(9) of that statute, which defines the term grievance. There were no other relevant communications between the parties concerning the union's requests for information, and the agency never provided the union with the requested information.

In April and May 1984, the union filed charges against the agency, alleging that the agency had committed an unfair labor practice in each of the four cases when it refused to furnish information requested by the union under section 7114(b)(4) of the Labor Statute. The relevant portion of that section, see note 1 supra, requires a federal agency to furnish to the union, upon request, information that is "reasonably available and necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining." In March 1985, the ALJ dismissed all four of the union's complaints, concluding that the union had not

conveyed to the agency its reasons for requesting the information and that the union's need for the information was not otherwise apparent from the circumstances. The ALJ also found that even if the union had satisfied the requirements of section 7114(b)(4), it had not offered sufficient information to permit the agency to determine whether disclosure was allowed under the Privacy Act, 5 U.S.C. § 552a.

In April 1986, the Authority adopted the ALJ's findings and conclusions and affirmed his rulings that the union had not sufficiently justified its requests for information under section 7114(b)(4). Because of this holding, the Authority found it unnecessary to consider the ALJ's resolution of the Privacy Act issues.[2] This petition for review followed.

## II.

The union argues that the Authority should have employed the "presumptive relevance" doctrine and required the agency to establish that the information requested by the union was not relevant to subjects within the scope of collective bargaining. The "presumptive relevance" doctrine was apparently first enunciated by Guy Farmer, then-Chairman of the National Labor Relations Board (the Board), in a concurring opinion in *Whitin Machine Works*, 108 N.L.R.B. 1537, enf'd, 217 F.2d 593 (4th Cir.1954), *cert. denied*, 349 U.S. 905, 75 S.Ct. 583, 99 L.Ed. 1242 (1955). In that case, the Board held that Whitin Machine Works had violated section 8(a)(5) of the National Labor Relations Act by failing to furnish the union with certain wage data concerning employees represented by the union. Chairman Farmer wrote:

I would not require that the union show the precise relevancy of the requested information to particular current bargaining issues. It is enough for me that the information relate to the wages or fringe benefits of the employees. Such information is obviously related to

the bargaining process, and the union is therefore entitled to ask and receive it.

\* \* \* \* \* \*

I am convinced, after careful consideration of the import of the problem on the collective-bargaining process, that this broad rule is necessary to avoid the disruptive effect of the endless bickering and jockeying which has theretofore been characteristic of union demands and employer reaction to requests by unions for wage and related information.

108 N.L.R.B. at 1541. The union argues that the Authority has applied this test in the past and that, in any event, it erred by refusing to give the union the benefit of the doctrine. We disagree.

Notwithstanding the union's assertions to the contrary, the Authority has consistently declined to adopt the approach suggested in *Whitin Machine Works*, opting instead for a case-by-case determination of whether the information requested by a union is, in the language of section 7114(b)(4)(B), "necessary for a full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining." See, e.g., Defense Mapping Agency, Aerospace Center, St. Louis, MO, 21 F.L.R.A. No. 77 (Apr. 30, 1986). None of the cases cited by the union support its contention that the Authority has applied the doctrine in the past and therefore should apply it now. In Farmers Home Administration Finance Office, St. Louis, MO, 23 F.L.R.A. No. 101 (Oct. 31, 1986), the Authority held that an agency's failure to honor a union's request for the names and home addresses of employees in the bargaining unit constituted an unfair labor practice. Although the Authority mentioned that its decision was consistent with Board decisions holding that names and addresses of bargaining unit employees are "presumptively relevant," it explicitly stated that its conclusion was "consistent with previous decisions where we held that an agency's duty to furnish

---

**2.** The Authority also found that in the case involving the Downtown office the agency did not refuse to furnish DOWR statistics, but that the

union failed to follow through with its arrangement with the agency to copy documents. The union has not challenged that finding on appeal.

other information under section 7114(b)(4) of the Statute turns on the nature of the request and the circumstances of each case."

Similarly, in National Weather Service, Silver Spring, MD, 21 F.L.R.A. No. 62 (Apr. 24, 1986), the Authority adopted an ALJ's decision holding that the agency's refusal to furnish the union with performance appraisal plans of certain named employees constituted an unfair labor practice. The ALJ's citation to *Whitin Machine Works*, and his acknowledgement that the Board had discussed a "similar issue" in that case, did not constitute a change of Authority policy.

There is no doubt that the National Labor Relations Board, construing the National Labor Relations Act, has relied on the "presumptive relevance" doctrine and that the courts have enforced Board orders based upon it. See, e.g., *San Diego Newspaper Guild v. NLRB*, 548 F.2d 863 (9th Cir.1977); *Prudential Insurance Co. v. NLRB*, 412 F.2d 77, 84 (2d Cir.), *cert. denied*, 396 U.S. 928, 90 S.Ct. 263, 24 L.Ed.2d 226 (1969). But the key issue before us is whether the Authority, created by Congress in 1978, is bound to follow the same pattern in construing a different statute. While private sector analogies are useful, it is obvious that public sector labor relations law may vary depending upon the statutory provisions and legal concepts involved. See *Library of Congress v. FLRA*, 699 F.2d 1280, 1287 (D.C.Cir.1983); compare Wellington and Winter, The Limits of Collective Bargaining in Public Employment, 78 Yale L.J. 1107 (1969), with Edwards, The Emerging Duty to Bargain in the Public Sector, 71 Mich.L.Rev. 885 (1973). Thus, with respect to a union's request for information, the employer's obligation to comply springs from different sources in the private and public sectors. A private employer's obligation to comply with a union's request for relevant information is an extension of the general duty to bargain in good faith imposed by section 8(a)(5) of the NLRA. See *NLRB v. Acme Industrial Co.*, 385 U.S. 432, 435–36, 87 S.Ct. 565, 567–68, 17 L.Ed.2d 495 (1967);

*NLRB v. Truitt Mfg. Co.*, 351 U.S. 149, 152–53, 76 S.Ct. 753, 755, 100 L.Ed. 1027 (1956). In contrast, a federal agency's obligation to furnish a union with information is specifically governed by section 7114(b)(4) of the Labor Statute, which requires the agency to furnish the union with information that is "reasonably available and necessary." Similarly, the scope of federal collective bargaining is more restricted than its private counterpart. For example, federal employee unions cannot bargain with the government with respect to pay rates or hours of employment. See *Library of Congress*, 699 F.2d at 1287 n. 33.

The union attempts to gloss over these differences by arguing that the duty to provide information set out in section 7114(b)(4) also evolved from a duty to bargain in good faith. It claims that section 7114(b)(4) merely codified the obligation of federal agencies under the statute's predecessor, Executive Order No. 11491, 34 Fed. Reg. 17,605 (1969), "to provide the union information which was relevant and necessary to the performance of its representational functions...." See Director of Administration Headquarters, U.S. Air Force, 6 F.L.R.A. 110, 120–21 (1981). Based on this account of the common origin of the duty to provide information in the private and public sectors, the union claims that the Authority must also embrace the "presumptive relevance" doctrine. We are not persuaded that this claimed similarity in the origin of the duty to provide information in the private and public sectors requires the Authority to adopt the "presumptive relevance" doctrine. At a minimum, the union's argument does not explain Congress' failure to include the word "relevance," or a provision providing for a relevance-based standard, in section 7114(b)(4).

■ The presumption established in *Whitin Machine Works*, and its progeny, is the result of the National Labor Relations Board's considerable experience with collective bargaining in the private sector and

represents its judgment that such a rule will best insure that the duty to bargain in good faith is maintained. Although the Authority may at some point reach, for the public sector, a conclusion similar to that of the National Labor Relations Board, and decide that the obligation to supply information under section 7114(b)(4) would be best managed through a presumption similar to the one described by Chairman Farmer in *Whitin Machine Works,* we cannot say that the Authority is required to do so. The Authority is charged with administering and construing the Labor Statute, 5 U.S.C. § 7105(a), and its conclusions will only be set aside when found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), which is not the case here. Absent a clearer showing that the "presumptive relevance" doctrine is required to effectuate Congress' policy in enacting the statute of improving federal labor relations, we decline to impose such a rule on the Authority. Cf. *Bureau of Alcohol, Tobacco and Firearms v. FLRA,* 464 U.S. 89, 96–97, 104 S.Ct. 439, 443–44, 78 L.Ed.2d 195 (1983).

### III.

The union also argues that, even without the benefit of a presumption, it adequately conveyed to the agency its need for the information sought. As already indicated, section 7114(b)(4)(B) requires the agency to furnish the union with information "reasonably available and necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining." In the decision under review here, the Authority held that the union failed to meet its burden of establishing its need for the information. The Authority noted that a union's "bare assertion" that it needs information to process a grievance would not automatically require an agency to supply the data, and found that "[i]n the instant case, the record reveals that the necessity for the requested information was not apparent from the circumstances and that the Charging Party failed to divulge the reasons why it was seeking the information...." The Authority noted that the union had "failed even to state that it was seeking information in connection with a grievance or to determine whether to file a grievance."

It is true that the union may have been unnecessarily cautious in its dealings with the agency and that it might have been able to disclose the precise issues underlying its requests without compromising the identity of potential grievants, which was a justifiable consideration. We also agree with the Authority's finding that much of the union's conclusory representations to the agency—its claims that the information it sought was "relevant and necessary" for it to "fairly and adequately represent" bargaining unit employees and its quotation of language from section 7114(b)(4)(B)—added little force to its requests for information. However, after careful review of the communications between the union and the agency in the four cases involved here, we find that the Authority's decision was based on too narrow an interpretation, on the record before it, of the agency's duty to provide information under section 7114(b)(4). Thus, the Authority stated that the union "failed even to state that it was seeking the information in connection with a grievance or to determine whether to file a grievance." This statement, while technically accurate, was too grudging a reading of the union's communications. Under the circumstances of this case, the union's reference in each request to Article 24 of the collective bargaining agreement and to section 7103(a)(9) of the Labor Statute put the agency on notice that the requests were related to an existing or a potential grievance. "It is well-settled that section 7114 creates a duty to provide information that would enable the Union to process a grievance or to determine whether or not to file a grievance." *American Federation of Government Employees, Local 1345 v. FLRA,* 793 F.2d 1360, 1364 (D.C.Cir.1986) (footnote omitted).

■ Furthermore, all of the requested documents contain information useful in

evaluating job performance and may be the basis for promoting or disciplining employees. We believe that in this case it was reasonably clear that the information the union sought was needed to evaluate an existing or potential grievance relating to these subjects, and therefore was necessary for "full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining." In considering whether a union complied with the requirements of section 7114(b)(4), the Authority must consider the union's request within "the context of the *full range* of union responsibilities in both the negotiations and the administration of a labor agreement." Id.

█ In view of the scope of the Labor Statute and the circumstances of this case, we hold that the union's references to the grievance provisions of the contract and the statute, combined with the obvious pertinence of the requested information to subjects within the scope of collective bargaining, satisfied the union's burden of showing the information was "necessary," as required by section 7114(b)(4). The agency's remaining concern, that the release of unsanitized documents will unduly invade the privacy of its employees, is a separate issue and should be considered by the Authority on remand.

The petition for review is granted, the decision of the Authority is reversed and the case is remanded for a determination of whether the information is exempt from disclosure under the Privacy Act.

MINER, Circuit Judge, dissenting:

While I concur in the well-reasoned conclusion that the union is not entitled to the benefit of the "presumptive relevance" doctrine, I cannot agree that the need for the information sought was conveyed adequately to the agency. In each of the four instances involved in this case, the union made written demands for voluminous, "unsanitized" personnel records. The information was characterized only as "necessary and relevant" for the union to "fairly and adequately represent the interests of the employees." The only other hint of the basis for the request was the union's reference to 5 U.S.C. § 7103(a)(9) (definition of grievance), 5 U.S.C. § 7114 (representation rights and duties) and Article 24 of the collective bargaining agreement (grievance procedures). The union adamantly refused the agency's requests for further details.

Only data *"necessary* for full and proper discussion," 5 U.S.C. § 7114(b)(4)(B) (emphasis supplied), need be furnished to a public employee labor organization. That it was impossible for the agency to make any determination regarding the need for the information sought is patent from an examination of the demands. Rather than furnish some meager justification in response to the agency's request for additional particulars, the union chose to "stonewall" in an effort to test the outer limits of its statutory right of access to agency data. The reasons for its pursuit of personnel records implicating Privacy Act considerations never were revealed. Because of that omission, the authority found that the agency was unable to make an informed judgment as to whether, or to what extent, the data was necessary for collective bargaining purposes. Accordingly, the authority found no illegality in the agency's refusal to provide the records.

Because the agency's determination cannot be said to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law, 5 U.S.C. §§ 706(2)(A), 7123(c); *New York Council, Association of Civilian Technicians v. FLRA,* 757 F.2d 502, 507 (2d Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985), I respectfully dissent.