United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued March 12, 1998 Decided May 29, 1998

 No. 97-1388

 Department of Justice, Immigration and Naturalization

 Service, Northern Region, 

 Twin Cities, Minnesota, 

 Petitioner

 v.

 Federal Labor Relations Authority, 

 Respondent

 National Border Patrol Council, 

 American Federation of Government Employees, AFL-CIO, 

 Intervenor

 On Petition for Review and Cross-Application for 

 Enforcement of an Order of the 

 Federal Labor Relations Authority

 Howard S. Scher, Attorney, U.S. Department of Justice, 
argued the cause for petitioner. With him on the briefs were 


Frank W. Hunger, Assistant Attorney General, and William 
Kanter, Attorney.

 David M. Smith, Solicitor, Federal Labor Relations Au-
thority, argued the cause for respondent. With him on the 
brief was Shari Polur, Attorney.

 Mark D. Roth and Stuart A. Kirsch were on the brief for 
intervenor National Border Patrol Council. Charles A. Hob-
bie entered an appearance.

 Before: Randolph, Rogers and Tatel, Circuit Judges.

 Opinion for the Court filed by Circuit Judge Tatel.

 Tatel, Circuit Judge: On remand from this court's decision 
in U.S. Department of Justice v. FLRA, 39 F.3d 361 (D.C. 
Cir. 1994), the Federal Labor Relations Authority found that 
a government employer committed an unfair labor practice by 
refusing to provide documents requested by a union repre-
senting an employee in a disciplinary action. Because the 
Authority properly concluded both that the union sought the 
documents in its capacity as exclusive representative and that 
the union needed the documents to assist the employee, we 
deny the employer's petition for review.

 I

 In AFGE, Local 2343 v. FLRA, No. 97-1355, slip op. at 2-3 
(D.C. Cir. May 29, 1998), also issued today, we describe the 
framework of the Federal Service Labor-Management Rela-
tions Statute, Pub. L. No. 95-454, s 701, 92 Stat. 1191-1216 
(1978) (codified as amended at 5 U.S.C. ss 7101-7135 (1994 & 
Supp. II 1996)), including the right of exclusive representa-
tives to request from agencies information that is "necessary 
for full and proper discussion, understanding, and negotiation 
of subjects within the scope of collective bargaining," 5 U.S.C. 
s 7114(b)(4)(B). Unlike Local 2343, where a union invoked 
section 7114(b)(4) in connection with a pending grievance, this 


case arises at the "oral reply" stage of the process for 
disciplining employees, an event occurring prior to the point 
at which a grievance can be filed. At the oral reply, employ-
ees are entitled to "answer [the charges against them] orally 
and in writing" and to "be represented by an attorney or 
other representative." Id. s 7513(b)(2)-(3).

 Following an investigation into allegations of theft, falsifica-
tion, and conduct unbecoming an officer, the Immigration and 
Naturalization Service notified employee Jason Wood of its 
intent to remove him from his position as a Border Patrol 
agent. Wood asked the National Border Patrol Council of 
the American Federation of Government Employees, AFL-
CIO, to help him prepare his response to the notice. Invok-
ing its rights as exclusive representative under section 
7114(b)(4), the Union asked the INS for the entire investiga-
tive file, all proposal and decision notices for disciplinary 
and/or adverse action cases similar to Wood's within INS's 
Northern Region in the past five years, and several other 
related documents. The Union said it needed the disciplinary 
records to "properly respond to the allegations" against 
Wood. Responding that the Union was entitled only to 
information relied upon in preparing the proposed disciplin-
ary action and that the Union's reference to section 7114(b)(4) 
was "not appropriate," the INS gave the Union a copy of the 
investigatory report, but nothing more. When the Union 
reiterated its request for the disciplinary records, saying that 
it needed them to determine whether Wood's proposed disci-
pline was consistent with the discipline meted out to other 
employees for similar offenses, the INS again declined, stat-
ing that disclosure would violate the privacy rights of employ-
ees whose records were sought. The Union offered to take 
the records in sanitized form, but the INS still refused to 
release them. After Wood's oral reply, the INS reduced the 
proposed removal to a five-day suspension. The Union then 
filed a grievance and invoked arbitration.

 Initiating the proceedings now before us, the Union filed 
unfair labor practice charges against the INS. Following a 
hearing, the administrative law judge concluded that the 
disciplinary records satisfied the requirements of section 


7114(b)(4)--i.e., they were "normally maintained," "reason-
ably available," "necessary," and not otherwise barred from 
disclosure. The Federal Labor Relations Authority agreed, 
finding that the Union had a "clear, articulated need" for the 
requested disciplinary records--i.e., to assist Wood in re-
sponding to the proposed removal action. U.S. Dep't of 
Justice, Wash., D.C., and U.S. INS, N. Region, Twin Cities, 
Minn., and Office of Inspector Gen., Wash., D.C., and Office 
of Prof'l Responsibility, Wash., D.C. ("Twin Cities I"), 46 
F.L.R.A. 1526, 1536 (1993). Because the INS refused to 
provide the requested information, the Authority ruled that 
the agency committed an unfair labor practice by failing to 
comply with section 7114(b)(4). Id. at 1536-38.

 Reversing and remanding, this court concluded that the 
Authority failed to frame its analysis in terms of the "particu-
larized need" test of NLRB v. FLRA, 952 F.2d 523 (D.C.Cir.
1992), directing the agency to "analyze anew the union's 
document request under the principles" of that case. DOJ, 
39 F.3d at 369-70. On remand, the Authority noted that it 
had since directly addressed NLRB v. FLRA in IRS, Wash-
ington, D.C., and IRS, Kansas City Service Center, Kansas 
City, Missouri, 50 F.L.R.A. 661 (1995), where it held that "a 
union requesting information under [section 7114(b)(4)] must 
establish particularized need for the information by articulat-
ing, with specificity, why it needs the requested information, 
including the uses to which the union will put the information, 
and the connection between those uses and the union's repre-
sentational responsibilities under the Statute." U.S. Dep't of 
Justice, INS, N. Region, Twin Cities, Minn. ("Twin Cities 
II"), 51 F.L.R.A. 1467, 1472 (1996) (quoting INS, Kansas 
City, 50 F.L.R.A. at 669). Applying that standard, the Au-
thority found that the Union had met its burden of establish-
ing particularized need for the disciplinary records. The 
union, the Authority pointed out, had "explicitly connected its 
request with the adverse action the [INS] proposed to take 
against Wood by stating that the requested information was 
needed to 'properly respond to the allegations' set forth in the 
notice," and asserted "that it needed the records in order to 
compare the discipline the [INS] had proposed for Wood with 


that given to other employees who had committed similar 
offenses." Id. at 1473-74. The Authority also found that the 
INS failed to demonstrate any countervailing anti-disclosure 
interests and questioned whether any such interests even 
existed since the Union agreed to take the disciplinary rec-
ords in sanitized form. Id. at 1479 n.11. Although conceding 
that the Union was not required to represent Wood, the 
Authority rejected the INS's argument that the Union had 
not requested the information in its capacity as "exclusive 
representative," as well as its argument that even if it had 
requested the documents in that capacity, the disciplinary 
records were not relevant to preparing for an oral reply 
because they concerned defenses that should be raised later 
in a grievance. Id. at 1478. For all of these reasons, the 
Authority again ruled that the INS committed an unfair labor 
practice. Id. at 1479.

 Having filed an unsuccessful petition for reconsideration, 
U.S. Dep't of Justice, INS, N. Region, Twin Cities, Minn. 
("Twin Cities III"), 52 F.L.R.A. 1323, 1338 (1997), the INS 
now petitions for review of the Authority's decision. We 
review Authority orders in accordance with section 10(e) of 
the Administrative Procedure Act, 5 U.S.C. s 706 (1994); see 
id. s 7123(c), upholding its determinations unless they are 
"arbitrary, capricious, an abuse of discretion, or otherwise not 
in accordance with law." Id. s 706(2)(A); see also Local 
2343, slip op at 6.

 II

 In support of its argument that it had no duty to provide 
the disciplinary records, the INS claims that a union does not 
act in its capacity as "exclusive representative" when it 
represents an employee facing proposed disciplinary action 
because, at that stage of the disciplinary process, the employ-
ee can choose not to be represented by the union. The INS 
also points out that since a mere proposal to discipline an 
employee is not grievable, a union can decline an employee's 
request for representation at the oral reply stage. According 
to the INS, therefore, as Wood's representative of choice at 


the oral reply stage, the Union had not requested the records 
in its capacity as "exclusive representative."

 Although neither party addresses the appropriate standard 
of review, the issue in this case--whether the Union acted as 
"exclusive representative" under the Federal Service Labor-
Management Statute--presents a straightforward question of 
statutory interpretation subject to the familiar two-step test 
of Chevron U.S.A. Inc. v. Natural Resources Defense Coun-
cil, Inc., 467 U.S. 837 (1984). See Fort Stewart Schs. v. 
FLRA, 495 U.S. 641, 644-45 (1990) (applying Chevron analy-
sis to the Authority's interpretation of the FSLMRS). If 
Congress has spoken directly to the "precise question at 
issue," we must give effect to its "unambiguously expressed 
intent." Chevron, 467 U.S. at 842-43. If, however, the 
statute is silent or ambiguous with respect to the specific 
issue, we defer to the Authority's interpretation, so long as 
that interpretation is reasonable. Id. at 843-44.

 We begin with the language of the statute. Section 
7103(a)(16) defines "exclusive representative" as any labor 
organization which:

 (A) is certified as the exclusive representative of em-
 ployees in an appropriate unit pursuant to section 7111 of 
 this title; or

 (B) was recognized by an agency immediately before 
 the effective date of this chapter as the exclusive repre-
 sentative of employees in an appropriate unit--

 (i) on the basis of an election, or

 (ii) on any basis other than an election,

 and continues to be so recognized in accordance with the 
 provisions of this chapter[.]

5 U.S.C. s 7103(a)(16). Nothing in this definition, section 
7114(b)(4), or any other part of the statute strips a union of 
exclusive representative status, once so designated, when it 
chooses to represent an employee at the oral reply stage. In 
fact, representing an employee at an oral reply falls comfort-
ably within an exclusive representative's broad section 


7114(a)(1) power to "act for ... all employees in the unit," id. 
s 7114(a)(1). Applying Chevron's first step, then, we think 
the statute entitled the Union in this case to take advantage 
of section 7114(b)(4)'s informational rights when it represent-
ed Wood at his oral reply.

 Even if the statute's language were ambiguous, we would 
find the Authority's holding in this case to be a perfectly 
reasonable interpretation of the statute. See Chevron, 467 
U.S. at 843-44. Once an employee asks a union for represen-
tation at the oral reply stage and the union agrees, we cannot 
imagine what would be gained by then denying the union the 
information it needs to perform its statutory duty. To be 
sure, exclusive representatives may decline employees' re-
quests for representation at the oral reply stage. See AFGE, 
Local 1857, AFL-CIO, 46 F.L.R.A. 904, 911-13 (1992). Em-
ployees may even retain non-union counsel and exclude the 
exclusive representative from oral reply proceedings. See 
U.S. Dep't of Justice, Bureau of Prisons, Fed. Correctional 
Inst. (Ray Brook, NY), 29 F.L.R.A. 584, 592-93 (1987). But 
as the Authority points out, these possibilities have nothing at 
all to do with the authority unions possess when they do in 
fact represent employees at oral replies. See Twin Cities II, 
51 F.L.R.A. at 1478. Indeed, even if the Union had not 
represented Wood at the oral reply, it could have obtained 
the disciplinary records by articulating a particularized need 
for the information in terms of fulfilling its representational 
duties and overseeing the administration of the collective 
bargaining agreement. See AFGE, AFL-CIO, Local 1345 v. 
FLRA, 793 F.2d 1360, 1364-65 (D.C. Cir. 1986).

 According to the INS, the Authority's interpretation preju-
dices employees who choose non-union representation. That 
may well be true, but we think the imbalance between union 
and non-union representation is not necessarily suspect. Em-
ployees might choose union representation over outside coun-
sel at oral replies precisely because unions can obtain infor-
mation under section 7114(b)(4). This result makes sense in 
view of the unique and central role unions play in ensuring an 
efficient and peaceful federal workforce. See 5 U.S.C. 
s 7101(a)(1) (recognizing that the right of workers to select 


"labor organizations of their own choosing ... contributes to 
the effective conduct of public business, and ... facilitates 
and encourages the amicable settlements of disputes"). 
Moreover, as exclusive representatives charged with acting 
for unit members and negotiating collective bargaining agree-
ments, see id. s 7114(a)(1), unions seek to vindicate not just 
employees' individual interests at the oral reply, as the INS 
contends, but also the bargaining unit's broader interest in 
the proper administration of the collective bargaining agree-
ment. By obtaining related disciplinary records at the oral 
reply stage, for example, the union might convince the agency 
to reduce the proposed punishment, thus possibly avoiding a 
grievance and promoting the bargaining unit's interest in 
expeditious resolution of labor disputes.

 Neither Department of the Air Force, Scott Air Force 
Base, Illinois, 104 F.3d 1396 (D.C. Cir. 1997), nor Depart-
ment of Defense Office of Dependent Schools, 36 F.L.R.A. 871 
(1990), requires a different result. In Scott, we considered 
whether a disciplinary letter that a union requested from the 
Air Force base involved a grievable subject within the scope 
of the collective bargaining agreement, not whether the union 
could actually bring a grievance at that point in the proceed-
ings. Here, the INS makes no claim that the Union's need 
for the disciplinary records--to make a disparate treatment 
argument--fell outside the scope of the collective bargaining 
agreement. Office of Dependent Schools is equally irrelevant. 
There, the Authority concluded that the employer's refusal to 
disclose the addresses of tentatively hired teachers did not 
violate section 7114(b)(4), stating: "Based on the remoteness 
and uncertainty of the recruits' prospective employment in 
the bargaining unit, we find that the record does not support 
a finding that the Union needed the recruits' home addresses 
in order to carry out its representational responsibilities." 
Id. at 874. This "remoteness" rationale has no applicability 
here. There is no question that Wood was a member of the 
bargaining unit, that the agency notified him of his proposed 
removal, that the information requested related to the terms 
of his employment, and that the Union agreed to serve as his 


representative. The Union's need for the documents was 
therefore imminent and definite, not "remote and uncertain."

 III

 Having determined that the Union may invoke its informa-
tional rights under section 7114(b)(4), we turn to the second 
issue in this case: Were the disciplinary records the Union 
requested "necessary" at the oral reply stage? In NLRB v. 
FLRA, we distinguished section 7114(b)(4)'s "necessary" stan-
dard from the concept of "relevance," holding that the section 
entitles unions to "something less than what full 'discovery' 
might require." 952 F.2d at 531.

 The INS argues that the Authority failed to apply NLRB v. 
FLRA's "necessity" standard, claiming that it merely found 
that the documents were relevant at the oral reply stage. We 
read the Authority's decision differently. Clearly focusing on 
"necessity" rather than relevance, the Authority found that 
after originally requesting the documents "to 'properly re-
spond to the allegations' set forth in the notice," Twin Cities 
II, 51 F.L.R.A. at 1473 (quoting Twin Cities I, 46 F.L.R.A. at 
1556), the Union later said it needed the documents "in order 
to compare the discipline the [INS] had proposed for Wood 
with that given to other employees who had committed 
similar offenses," id. at 1473-74. Further focusing on "neces-
sity," the Authority credited the Union's statement that it 
requested records spanning five years and covering an entire 
geographic region because the number of disciplinary actions 
was small. Id. at 1474. To be sure, the Authority said that 
"information establishing ... disparate treatment [is] rele-
vant in an oral reply." Id. at 1478. But this statement came 
in response to the INS's assertion that the disciplinary rec-
ords were irrelevant at the oral reply stage and only after the 
Authority had already concluded that "the Union satisfied its 
burden to articulate and establish a particularized need for 
the requested disciplinary and adverse action letters." Id. at 
1476.

 Claiming that information regarding disparate treatment is 
unnecessary until the grievance stage, the INS argues that 


the only information the Union needed to prepare for Wood's 
oral reply was the investigatory report upon which the INS 
had based its proposed discipline and which it had already 
given the Union. The Authority labeled this effort to distin-
guish between preparing for an oral reply and preparing for 
grievance proceedings a "false line." Id. at 1478. We agree. 
The oral reply is not limited to whether the employee commit-
ted the alleged offense. As this case demonstrates--after 
Wood's presentation, the agency reduced the proposed termi-
nation to a five-day suspension--the oral reply also encom-
passes the appropriate punishment. In fact, for employees 
who admit they committed the alleged offense but believe the 
proposed punishment does not fit the crime, evidence of 
disparate treatment constitutes their only available defense. 
Information about how an agency disciplines other employees 
is thus "necessary" at the oral reply stage.

 The INS points to an Authority regulation stating that 
"[t]he notice of [proposed action] shall inform the employee of 
his or her right to review the material which is relied on to 
support the reasons for action given in the notice." 5 C.F.R. 
s 752.404(b)(1) (1997). Nothing in that regulation, however, 
supports the INS's argument that employees have no need 
for disparate treatment information at the oral reply stage. 
The regulation says no more than that employees have a right 
to review information forming the basis of proposed charges 
and discipline, information that the parties agree is "neces-
sary" for oral reply purposes. As counsel for the Authority 
explained at oral argument, the regulation places a floor 
under, not a ceiling on, the types of information that might be 
necessary to respond to proposed disciplinary action.

 Finally, by arguing that the Authority found that the Union 
satisfied the particularized need test not because it needed 
the disciplinary records at the oral reply stage, but because it 
might need the records once the agency disciplined Wood, the 
INS misconstrues the Authority's decision. In saying that 
"[t]he matter for which representation was sought was direct-
ly related to Wood's conditions of employment and, ultimate-
ly, ripened into a matter that is grievable and arbitrable," 


Twin Cities II, 51 F.L.R.A. at 1478, the Authority was merely 
explaining the Union's "exclusive representative" capacity, 
not determining that the documents were unnecessary until 
the grievance stage.

 IV

 The Union asks us to sanction the INS for pursuing this 
appeal because in its petition for reconsideration before the 
Authority, the agency revealed that it no longer had the 
requested documents. Even though the Authority presumed 
the INS had destroyed some of the documents, Twin Cities 
III, 52 F.L.R.A. at 1337, we decline the Union's request. For 
one thing, whether the agency committed an unfair labor 
practice by refusing the Union's request for the disciplinary 
records--the only issue before us--is unaffected by whether 
the agency might have later destroyed them. See AFGE, 
Local 1941, AFL-CIO v. FLRA, 837 F.2d 495, 497 n.2 (D.C. 
Cir. 1988) (unfair labor practice not mooted by employee's 
death); see also Department of Justice v. FLRA, 991 F.2d 
285, 289 (5th Cir. 1993) ("[Unfair labor practice] cases ... 
generally do not become moot when the individual parties 
resolve the specific matter that gave rise to the dispute 
because the 'Board is entitled to have the resumption of the 
unfair practice barred by an enforcement decree.' " (quoting 
NLRB v. Raytheon Co., 398 U.S. 25, 27 (1970))). Moreover, 
recognizing its power to punish the INS for destroying docu-
ments, the Authority left the issue for the compliance stage, 
saying "the assertion concerning destruction of the docu-
ments is unsubstantiated and unclear." Twin Cities III, 52 
F.L.R.A. at 1337. Under these circumstances, we think 
consideration of sanctions is premature.

 The INS's petition for review is denied.

So ordered.