988 F.2d 1267
 142 L.R.R.M. (BNA) 2902, 300 U.S.App.D.C. 309
 UNITED STATES DEPARTMENT OF JUSTICE, BUREAU OF PRISONS,
ALLENWOOD FEDERAL PRISON CAMP, MONTGOMERY,
PENNSYLVANIA, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent.
UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent,
American Federation of Government Employees, AFL-CIO, Local
476, Intervenor.
UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent,
American Federation of Government Employees, AFL-CIO, Intervenor.
 Nos. 91-1293, 91-1634 and 92-1062.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Feb. 5, 1993.
Decided April 2, 1993.
 
 Petitions for Review of Orders of the Federal Labor Relations Authority.
 Michael S. Raab, Atty., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., and Mark B. Stern, Atty., Dept. of Justice, Washington, DC, were on the brief, for petitioner. William Kanter and Lori M. Beranek, Attys., Dept. of Justice, Washington, DC, also entered appearances for petitioner.
 William E. Persina, Atty., Federal Labor Relations Authority, with whom David M. Smith, Sol., Federal Labor Relations Authority, Washington, DC, was on the brief, for respondent. William R. Tobey, Arthur A. Horowitz, and Richard Zorn, Attys., Federal Labor Relations Authority, Washington, DC, also entered appearances for respondent.
 Mark D. Roth, Charles A. Hobbie, and Alexia McCaskill, Washington, DC, entered appearances for intervenor American Federation of Government Employees, AFL-CIO.
 Before BUCKLEY, SENTELLE, and RANDOLPH, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SENTELLE.
 SENTELLE, Circuit Judge:
 
 
 1
 In each of these consolidated petitions, a government agency challenges Federal Labor Relations Authority ("FLRA" or "Authority") rulings that it must disclose a "crediting plan," which specifies employment criteria for particular positions, to a union seeking the plan to help it determine whether a union member who was an unsuccessful applicant for a position involving the plan has a cognizable grievance.[1] We remand these cases so the FLRA can reconsider its analysis of the unions' "need" for these materials in light of two cases addressing the standard for assessing such necessity decided by this Court since the Authority decisions.
 
 I. BACKGROUND
 
 2
 The facts in each case are stipulated, and the legal issue is identical in all. "Crediting plans" are documents developed by an employer to rate and rank candidates for a specific position. A crediting plan typically consists of a list of criteria reflecting the knowledge, skills, and other characteristics deemed necessary for a particular job, as well as devices used to measure whether a candidate satisfies those criteria. In each of these cases, a union requested access to a federal agency's crediting plan relating to a particular position for which one of its members was an unsuccessful applicant. In each case, the agency refused to release the requested crediting plan, and the union filed an unfair labor practice charge.
 
 
 3
 In each case, the FLRA held that the agency's failure to release the crediting plans violated the Federal Service Labor-Management Relations Statute ("FSLMRS" or "Statute"), 5 U.S.C. § 7101 et seq. (1988 & Supp.1992), specifically § 7114(a)(4), which requires a federal agency and the exclusive representative of its employees to "negotiate in good faith" concerning conditions of employment. This duty includes, inter alia, an obligation to disclose upon request information which may lawfully be disclosed and "is reasonably available and necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining." 5 U.S.C. § 7114(b)(4)(B). The agencies' violation of their duty to negotiate in good faith constituted an unfair labor practice under the FSLMRS. See 5 U.S.C. §§ 7116(a)(1), (5) and (8).
 
 
 4
 In each case, the FLRA held that the unions needed the crediting plans to fulfill their representational functions under § 7114(b)(4)(B). For example, in Allenwood the FLRA reasoned:
 
 
 5
 Without the additional information that would be provided by the crediting plan ... the Union has no way of evaluating the information that it apparently has received in order to determine whether it should file a grievance on behalf of the prospective grievant. Indeed, in this situation, the crediting plan is critical to a determination of whether the selection procedure was improperly conducted or whether there is a strong argument that the prospective grievant should have been chosen for the position.
 
 
 6
 Allenwood, 40 F.L.R.A. No. 42, at 9, J.A. at 12; see also HUD2, 43 F.L.R.A. No. 60, J.A. at 116; HUD1, 42 F.L.R.A. No. 71, J.A. at 73.
 
 II. ANALYSIS
 
 7
 This case is the latest in a series of attempts by federal employee unions to gain access to agency crediting plans. In National Treasury Employees Union v. United States Customs Serv., 802 F.2d 525, 531 (D.C.Cir.1986), the union attempted to obtain Customs Service crediting plans under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1988). This Court held that the crediting plans were exempt from disclosure because they "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2) (1988). The Court explained that "advance knowledge of the plans by applicants would allow and induce at least some of them to embellish--or perhaps even fabricate--their backgrounds to suit the appropriate crediting plan." 802 F.2d at 529. The Eleventh Circuit reached the same result in Kaganove v. EPA, 856 F.2d 884, 886-90 (7th Cir.1988), cert. denied, 488 U.S. 1011, 109 S.Ct. 798, 102 L.Ed.2d 789 (1989).
 
 
 8
 In the proceedings we now review, federal employee unions seek access to crediting plans under the FSLMRS, which requires a federal agency to disclose information "necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining." 5 U.S.C. § 7114(b)(4)(B). The issue before us is the meaning and application of this necessity requirement.
 
 
 9
 The FLRA held that the unions needed access to the crediting plans in order to determine whether a disappointed employee has a grievable grievance against the agency. In assessing the unions' need, the FLRA applied a broad standard, focusing upon the relevance of the information sought. See Allenwood, 40 F.L.R.A. No. 42, at 10, J.A. at 13; HUD1 (ALJ), OALJ 91-67, at 7-8, J.A. at 84-85; HUD2 (ALJ), OALJ 91-90, at 5-6, J.A. at 124-25. Under this standard a union satisfies the necessity requirement of § 7114(b)(4)(B) if the data sought "would be useful to the Union in the investigation and/or presentation of a potential grievance." United States Dep't of Justice, Immigration and Naturalization Serv., Border Patrol, El Paso, Texas, 37 F.L.R.A. 1310, 1320 (1990) (emphasis added). The FLRA urges that its application of the broad standard is appropriate because crediting plans are the "Rosetta stone," without which "[a] union could not hope to make an intelligent decision as to whether a selection action was properly conducted by management." Respondent's Br. at 26.
 
 
 10
 The FLRA's interpretation of "necessity" is inconsistent with this Court's decisions in two cases decided since the FLRA rulings in these cases. In Department of Air Force v. FLRA, 956 F.2d 1223, 1224 (D.C.Cir.1992) (per curiam), and NLRB v. FLRA, 952 F.2d 523, 532 (D.C.Cir.1992), we made clear that § 7114(b)(4)(B) requires a union to demonstrate a "particularized need" for information it seeks. In evaluating whether a union has satisfied this standard, the Authority must consider 1) the union's particularized need for the requested information sought, see NLRB, 952 F.2d at 532 (the particularized need standard may well be met "where the union has a grievable complaint covering the information" (emphasis in original)); Air Force, 956 F.2d at 1225 (same), and 2) the countervailing anti-disclosure interests of the agency, see NLRB, 952 F.2d at 531 ("[a] Statute that requires 'necessity' implicitly recognizes countervailing interests, because a 'need,' by definition, is an interest of particular strength and urgency."); Air Force, 956 F.2d at 1224 ("The Authority should have considered countervailing interests against disclosure, and because it did not do so we remand for reconsideration.").
 
 
 11
 The FLRA argues first, that the "particularized need" analysis should not be applied to the crediting plans here at issue; and second, that even under the "particularized need" test, the Authority correctly ordered disclosure of the crediting plans. We find both of these arguments to be without merit.
 
 
 12
 The argument that the "particularized need" test should not apply here relies on the proposition that "Authority analysis of union need for data in the grievance setting has generally focused only on whether the data would be useful to the union in grievance investigation or presentation." Respondent's Br. at 16 (emphasis added). The FLRA urges that "considerations such as the employers' countervailing interests against disclosure need not be considered in resolving these cases." Respondent's Br. at 20. This argument is a non-starter. We rejected this theory, advanced under the rubric of a relevance test, in NLRB and Air Force.
 
 
 13
 The FLRA attempts to distinguish the information sought in NLRB and Air Force as "predecisional, deliberative management memos ... and employee disciplinary records," whereas the information contained in the crediting plans are "objective, non-personal data." Respondent's Br. at 16. From this the FLRA concludes that "[t]he unions' data requests in these cases therefore should not be judged by the stringent standards set by this Court's 'particularized need' analysis in NLRB and [Air Force ]." Id. This argument avails the Authority nothing. The FSLMRS does not distinguish between "predecisional, deliberative" data and "objective, non-personal data." The necessity requirement stipulated in section 7114(b)(4)(B) is unitary.
 
 
 14
 The FLRA's second response to NLRB and Air Force is a half-hearted insistence that even under a "particularized need" analysis, the Authority correctly ordered disclosure of the crediting plans. The FLRA argues it balanced the agencies' interests in nondisclosure against the unions' need for the crediting plans and reminds us that it is entitled to deference in balancing the competing interests at issue. See Beth Israel Hosp. v. NLRB, 437 U.S. 483, 501, 98 S.Ct. 2463, 2473, 57 L.Ed.2d 370 (1978) (striking the balance between conflicting legitimate interests under the national labor laws is " 'often a difficult and delicate responsibility, which the Congress committed primarily to the National Labor Relations Board, subject to limited judicial review' ") (quoting NLRB v. Truck Drivers Local Union No. 449, 353 U.S. 87, 96, 77 S.Ct. 643, 648, 1 L.Ed.2d 676 (1957)).
 
 
 15
 While mindful of the deference we owe federal agencies in applying statutes they administer, see Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984), we are constrained to conclude that the FLRA's decisions do not pass muster under the necessity requirement of § 7114(b)(4)(B), as clarified by this Court in NLRB and Air Force. In each of these cases, the FLRA entirely failed to consider whether the union had a particularized need, comparable to the potentially grievable complaints considered in NLRB and Air Force. In Allenwood, the Authority merely stated that "the [agency's] assertion that the grievance was nongrievable did not relieve [it] of its obligation to furnish" the information. 40 F.L.R.A. No. 42, at 10, J.A. at 13. The reasoning of the ALJs in the two HUD cases, which the Authority adopted without analysis, is similarly spare. See HUD1 (ALJ), OALJ 91-67, at 7, J.A. at 84 (stating that the agency's "assertion that the grievance was nongrievable does not relieve it of the duty to furnish information under the Statute"); HUD2 (ALJ), OALJ 91-90, at 6, J.A. at 125 (stating that "there need not be a pending grievance at the time the request is made").
 
 
 16
 These conclusory assertions plainly do not satisfy the requirement that the FLRA weigh the particularized need of the union for the information against the agency's interest in withholding it before ordering disclosure of a crediting plan. See NLRB, 952 F.2d at 531-32. On other occasions, the Authority itself has recognized that under § 7114(b)(4)(B) "a union's mere assertion that it needs data to process a grievance does not automatically oblige the agency to supply such data." See United States Equal Employment Opportunity Comm'n, Washington, D.C., 20 F.L.R.A. 357, 357-58 (1985). While it is true that § 7114(b)(4)(B) does not require a union actually to file a grievance before it seeks information pursuant to the FSLMRS, see American Fed'n of Gov't Employees, AFL-CIO, Local 1345 v. FLRA, 793 F.2d 1360, 1364 (D.C.Cir.1986), NLRB and Air Force make clear that a union is required to articulate some particularized need for the information sought.
 
 
 17
 This conclusion is neither novel nor unique to the federal context. Even in the private sector--where disclosure is governed by the less stringent relevance standard--a union is not entitled to information absent "some initial, but not overwhelming, demonstration by the union that some violation is or has been taking place." San Diego Newspaper Guild, Local No. 95 v. NLRB, 548 F.2d 863, 869 (9th Cir.1977); see also Detroit Edison Co. v. NLRB, 440 U.S. 301, 314, 99 S.Ct. 1123, 1131, 59 L.Ed.2d 333 (1979) ("A union's bare assertion that it needs information to process a grievance does not automatically oblige the employer to supply all the information in the manner requested"); NLRB v. George Koch Sons, Inc., 950 F.2d 1324, 1332 (7th Cir.1991) (collecting courts of appeals decisions that require a union to establish a reasonable basis for suspecting that information sought will aid the union in performing its representational duties).
 
 
 18
 The FLRA also impermissibly minimized or disregarded the important anti-disclosure interests of the agencies. In Allenwood, the FLRA dismissed the agency's concerns by noting that the selection process had been completed and that the union had not indicated that it would use the crediting plan for any purpose other than to process the possible grievance. Allenwood, 40 F.L.R.A. No. 42, at 10, J.A. at 13. In the two HUD cases, the Authority simply adopted thinly reasoned findings of its ALJs, see HUD1, 42 F.L.R.A. No. 71, at 2, J.A. at 74; HUD2, 43 F.L.R.A. No. 60, at 1-2, J.A. at 116-17, which dismissed the agencies' countervailing interests solely on the fact that the selection process had terminated. See HUD1 (ALJ), OALJ 91-67, at 7, J.A. at 84; HUD2 (ALJ), OALJ 91-90, at 5-6, J.A. at 124-25.
 
 
 19
 In Allenwood the FLRA appeared to suggest that the union would not allow the crediting plan to leak out, see 40 F.L.R.A. No. 42, at 10, but the union certainly made no guarantees in that case, and neither the ALJs nor the Authority said anything about this matter in either of the other two cases under review. Contrary to respondents' wish, the possibility of union misuse of the information must be of concern to the FLRA. See Detroit Edison Co. v. NLRB, 440 U.S. 301, 315, 99 S.Ct. 1123, 1131, 59 L.Ed.2d 333 (1979) (holding that NLRB abused its discretion in requiring employer to release to union certain employee aptitude tests used to screen job applicants, in part because the "remedy selected by the Board does not adequately protect the security of the tests"). In response to earlier attempts to gain access to crediting plans under FOIA, this and other courts have explicitly recognized agencies' interests in the confidentiality of crediting plans. See National Treasury Employees Union v. United States Customs Serv., 802 F.2d 525, 531 (D.C.Cir.1986); see also Kaganove v. EPA, 856 F.2d 884, 886-90 (7th Cir.1988), cert. denied, 488 U.S. 1011, 109 S.Ct. 798, 102 L.Ed.2d 789 (1989).
 
 
 20
 The FLRA maintains that the agencies' legitimate concerns about the harm of disclosure in the FOIA cases are simply not present in these cases because the personnel decisions at issue are complete. This argument is not only inadequate, but disingenuous. As the agencies point out, crediting plans are often re-used. In any event, if a union was successful in its unfair labor practice complaint, another job search to fill the job at issue would be required, presumably utilizing the same crediting plan, the contents of which would be known to the union. Thus, the mere fact that the challenged selection process has been completed does not eliminate or reduce agencies' interest in maintaining the confidentiality of their crediting plans.
 
 III. CONCLUSION
 
 21
 Section 7114(b)(4)(B), as explained in NLRB and Air Force, requires the FLRA to determine whether a union has demonstrated a particularized need for the information sought. This mandates an inquiry into whether the union has a particularized need for the information, and whether the union's need is outweighed by the agency's countervailing interest in keeping the crediting plans confidential. In these cases the FLRA applied a less demanding test, based solely upon the usefulness or relevance of the requested information to the union, and failed adequately to assess either the particularized need for access to the crediting plans or the countervailing agency interest. Thus, we grant the petitions for review and remand these cases so the FLRA can ascertain the necessity of the requested crediting plans in accordance with the Statute, as construed in Air Force and NLRB.
 
 
 22
 It is so ordered.
 
 
 
 [1]
 We will refer to the three FLRA decisions and the corresponding Administrative Law Judge ("ALJ") opinions as follows: United States Dep't of Justice, Bureau of Prisons, Allenwood Fed. Prison Camp, Montgomery, Pennsylvania, 40 F.L.R.A. No. 42 (Apr. 26, 1991), Joint Appendix ("J.A.") 4 ( Allenwood); United States Dep't of Housing and Urban Dev., 42 F.L.R.A. 1002 (1991), J.A. 70 (HUD1); United States Dep't of Housing and Urban Dev., OALJ 91-67 (June 19, 1991), J.A. 78 ( HUD1 (ALJ)); United States Dep't of Housing and Urban Dev., 43 F.L.R.A. 748 (1991), J.A. 116 (HUD2); United States Dep't of Housing and Urban Dev., OALJ 91-90 (Sept. 6, 1991), J.A. 120 (HUD2 (ALJ))