**DEPARTMENT OF THE AIR FORCE, SCOTT AIR FORCE BASE, ILLINOIS, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

No. 96–1060.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 6, 1996.

Decided Jan. 24, 1997.

Katherine S. Gruenheck, Attorney, U.S. Department of Justice, Washington, DC, argued the cause for petitioner, with whom Frank W. Hunger, Assistant Attorney General, and Leonard Schaitman, Attorney, were on the briefs.

David M. Smith, Solicitor, Federal Labor Relations Authority, argued the cause for respondent, with whom William R. Tobey, Deputy Solicitor, and James F. Blandford, Attorney, were on the brief.

Before: EDWARDS, Chief Judge, HENDERSON and ROGERS, Circuit Judges.

Opinion for the Court filed by Chief Judge EDWARDS.

HARRY T. EDWARDS, Chief Judge:

This case, which is before the court for the second time, involves a decision by the Federal Labor Relations Authority ("FLRA" or "Authority") holding that petitioner, Department of the Air Force, Scott Air Force Base, Illinois ("Scott AFB"), violated the Federal Labor–Management Relations Statute ("Labor Statute"), 5 U.S.C. § 7114(b)(4)(B), when it refused to disclose information to the National Association of Government Employees ("NAGE" or "Union").

The dispute between the Union and Scott AFB arose when a commissary employee, who was a member of a bargaining unit represented by NAGE, claimed that a supervisor used physical force against him on two occasions. The Union filed a grievance under the parties' collective bargaining agreement, under a grievance provision allowing either party to seek "appropriate relief in a matter of concern or dissatisfaction which is subject to the control of the union or the employer." When the parties were unable to resolve the grievance, the Union filed for arbitration under the agreement. The Union also requested to see a copy of the disciplinary letter that Scott AFB had issued to the supervisor, so that it could determine whether to proceed with arbitration. When Scott AFB declined to disclose the disciplinary letter, the Union filed an unfair labor practice charge with the FLRA.

When the case was first before the FLRA, the Authority held that the Labor Statute required disclosure of the letter. *See Department of the Air Force and NAGE*, 38 F.L.R.A. No. 42 (1990) (hereinafter *Scott I*), *reprinted in* Joint Appendix ("J.A.") 194. On review of *Scott I*, this court remanded the case to the FLRA for reconsideration in light of *NLRB v. FLRA*, 952 F.2d 523 (D.C.Cir. 1992), to allow the Authority to determine whether the requested letter was *necessary*, and not merely *relevant*, to the Union's carrying out of its representational duties. *See Department of the Air Force v. FLRA*, 956 F.2d 1223, 1224 (D.C.Cir.1992). The court instructed the FLRA to determine whether the Union possessed a "particularized need"

for the information that was not defeated by countervailing interests. *See id.* at 1225. On remand, the Authority found that the Union did possess a particularized need for disclosure of the letter, and that any countervailing interests did not outweigh the Union's need, and, thus, the Labor Statute requires disclosure of the letter. The Authority also held that the Privacy Act, 5 U.S.C. § 552a, does not prohibit release of the document. *See Department of the Air Force and NAGE*, 51 F.L.R.A. No. 59 (1995) (hereinafter *Scott II*), *reprinted in* J.A. 292. In its petition for review to this court, Scott AFB claims that the Authority's finding that the Labor Statute requires disclosure of the letter is unreasonable, and that disclosure of the letter to the Union violates the Privacy Act. We find no merit in these contentions.

The issue of whether the disputed letter is necessary to the Union to fulfill its representational duties turns on whether the Union's claim to view the letter is tied to a matter that is grievable under the parties' collective bargaining agreement. The question of grievability, in turn, hinges on whether the Union sought the letter to evaluate a claim regarding workplace safety, which is indisputably a grievable subject, or solely to contest the appropriateness of disciplinary action taken against a supervisor, which is outside of the scope of collective bargaining. As a supervisor striking an employee is undoubtedly tied to workplace safety, the Authority was not unreasonable in holding that the Union's request for disclosure was tied to workplace safety. Thus, because the Union sought information that was necessary to determine whether to pursue arbitration over a grievable subject, the Authority was justified in finding that the Union possessed a particularized need for the disputed letter. The Authority also reasonably balanced the interests that weigh against disclosure of the letter and committed no error in finding that the countervailing interests do not defeat the Union's particularized need. Additionally, we hold that the Privacy Act does not prohibit disclosure of the letter to the Union, because the Union's request for the document falls within the "routine use" exception of the Act. Finally, we reject petitioner's contention that this case should be dismissed on grounds of prudential mootness.

## I. BACKGROUND

### A. *Factual Background*

NAGE is the exclusive bargaining representative for a unit of non-supervisory employees at the commissary at Scott Air Force Base, Illinois. The collective bargaining agreement between NAGE and Scott AFB contains a grievance procedure and defines a grievance covered by the negotiated procedure as "a request by any employee . . ., the union, or the employer for appropriate relief in a matter of concern or dissatisfaction which is subject to the control of the union or the employer." Amended Appropriated Fund Labor–Management Agreement Between Scott Air Force Base, Illinois and NAGE, article XXI, section 3, *reprinted in* J.A. 30.

On March 6, 1987, a bargaining unit employee at the commissary complained to the Union that his supervisor had used physical force against him on two occasions, that the force was unfair and improper treatment, and that the supervisor, who worked in the meat cutting room, contributed to an unsafe work environment. In turn, the Union filed a grievance with Scott AFB, seeking to ensure safe working conditions for unit employees. Noting that the supervisor worked "around sharp knives, saws and other dangerous factors," the Union requested that Scott AFB refer the supervisor for a fitness-for-duty examination and suspend him for 30 days. *See* Letter from Carl Denton, NAGE, to Darlene Greenleaf, Commissary Officer, Scott AFB (Mar. 27, 1987), *reprinted in* J.A. 32. During the various steps of the grievance procedure, Scott AFB continually denied the Union's grievance request, asserting that the discipline of supervisors was not within the scope of subjects that were grievable under the collective bargaining agreement. *See* Letter from Darlene Greenleaf, Commissary Officer, Scott AFB, to Jerry Files, Union Steward (Apr. 7, 1987), *reprinted in* J.A. 33; Letter from Gracin Akers, Assistant Civilian Personnel Officer, Scott AFB, to Carl Denton, President, NAGE Lo-

cal R7–23 (Apr. 22, 1987), *reprinted in* J.A. 35.

The Union finally sought to resolve the grievance through arbitration. To determine whether to pursue arbitration, Union officials asked to see the disciplinary letter issued to the supervisor. *See* Letter from Mark Clevenger, Assistant General Counsel, NAGE Midwest Office, to Daniel Marlett, Civilian Personnel Officer, Scott AFB (July 28, 1987), *reprinted in* J.A. 71. Scott AFB denied the Union's request to view the letter. *See* Letter from Daniel Marlett, Civilian Personnel Officer, Scott AFB, to Mark Clevenger, Assistant General Counsel, NAGE Midwest Office (Oct. 18, 1987), *reprinted in* J.A. 74. Subsequently, the Union filed an unfair labor charge against Scott AFB with the Authority, asserting that disclosure of the letter was required by 5 U.S.C. § 7114(b)(4)(B) of the Labor Statute.

B. *Procedural Background*

In its initial decision in this case, the Authority concluded that NAGE was entitled to see the disciplinary letter in order "to evaluate the grievance, [to] decide whether to pursue it, and to prepare to represent the grievant in the arbitration of the grievance." *See Scott I* at 416, *reprinted in* J.A. 200. The FLRA also held that the requested information was necessary without regard to whether an arbitrator had the authority to order the discipline of a supervisor, and that the Privacy Act did not prohibit disclosure of the requested information. *See id.* at 416–17, *reprinted in* J.A. 200–01.

Scott AFB petitioned for review of *Scott I*. Without reaching the merits, this court remanded the case to the Authority for reconsideration in light of this court's intervening decision in *NLRB v. FLRA*, 952 F.2d at 523. *See Department of the Air Force*, 956 F.2d at 1224. In *NLRB v. FLRA*, the court had concluded that, pursuant to the Labor Statute, 5 U.S.C. § 7114, an agency need not disclose certain information to a union unless the union has a "particularized need" for such information and, further, that the Labor Statute requires consideration of the "countervailing interests" against disclosure. *See NLRB v. FLRA*, 952 F.2d at 531–32. This court, in its remand of *Scott I*, identified three interests for the Authority to balance against the Union's interest in disclosure: (1) Scott AFB's interest in confidentiality, (2) the supervisor's interest in privacy, and (3) the interest in postponing disclosure of the document until the grievability question is resolved. *See Department of the Air Force*, 956 F.2d at 1225. The court declined to analyze whether the Privacy Act prohibited disclosure of the requested disciplinary letter. *See id.*

On remand, the Authority concluded that the record before it was insufficient to make the determinations that were required by this court. Accordingly, the Authority remanded the case to an administrative law judge ("ALJ") for further proceedings. After supplemental hearings, the ALJ concluded that the "countervailing interests" identified by this court did not outweigh the Union's interest in disclosure of the document. *See Department of the Air Force and NAGE*, Case No. 5–CA–80069, Supplemental Decision (September 30, 1992) at 13, *reprinted in* J.A. 286. The Authority then adopted the conclusions of the ALJ, finding that 5 U.S.C. § 7114(b)(4)(B) required disclosure of the final letter of discipline. *See Scott II*, *reprinted in* J.A. 292. Further, the FLRA determined that the Union's request for the disciplinary letter was within the scope of subjects covered by the collective bargaining agreement. *See id.* at 12, *reprinted in* J.A. 303. Finally, the Authority found that the Privacy Act did not prohibit disclosure of the letter. *See id.* at 16–17, *reprinted in* J.A. 307–08.

Scott AFB now petitions this court for review of the Authority's most recent decision, and the Authority cross-applies for enforcement.

II. ANALYSIS

A. *Section 7114(b)(4)(B)*

 The Labor Statute requires federal employers to disclose to unions information that is "necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining," 5 U.S.C. § 7114(b)(4)(B), as long as,

among other things, disclosure is "not prohibited by law." 5 U.S.C. § 7114(b)(4). In *NLRB v. FLRA,* this court held that, pursuant to subsection (b)(4)(B), the statute entitles unions only to information that is "necessary," and not merely relevant, to subjects within the scope of collective bargaining. *See* 952 F.2d at 531. Hence, in order to warrant disclosure of a document, a Union must demonstrate a particularized need, and, further, no countervailing interests may outweigh the Union's need. *See id.* at 531–32.

The court in *NLRB v. FLRA* noted that "the union may well meet the particularized-need standard *where the union has a grievable complaint covering the information.* A statute or the contract may impose a duty on the agency regarding predecisional deliberation, and the duty may then ground a grievable claim of right in the employee or union. If so, disclosure normally should obtain." *NLRB v. FLRA,* 952 F.2d at 532–33. This is precisely the situation that we face in the instant case. Thus, we find that the Authority reasonably concluded that the Union possesses a particularized need for disclosure of the requested document and that countervailing interests do not defeat the need.

### 1. *Particularized Need*

In the instant case, the bargaining agreement between Scott AFB and NAGE defines a grievance "as a request by any employee or group of employees acting as individuals, the union, or the employer for appropriate relief in a matter of concern or dissatisfaction which is subject to the control of the union or the employer." Amended Appropriated Fund Labor–Management Agreement between Scott Air Force Base, Illinois and NAGE, article XXI, section 3, *reprinted in* J.A. 30. Given the bargaining agreement's broad language, matters affecting workplace safety are clearly grievable. And physical abuse of employees by supervisors in the workplace surely is a matter relating to safety on the job. It is hardly surprising, therefore, that the Union sought redress under the collective bargaining agreement to protect against a supervisor assaulting employees on the job. Likewise, it is hardly surprising that the Union sought to see the disciplinary letter issued to the offending supervisor in order to determine whether to pursue arbitration. After all, it is difficult for a union to know whether a supervisor remains a threat to employees without knowing how the employer has treated the supervisor's prior offenses.

The Authority ruled that, although the disputed letter deals with the discipline of a supervisor (a nonbargainable issue), the main focus of the Union's grievance was to ensure the workplace safety of its bargaining unit employees. In other words, there is no question that there is a connection between an employee being struck by a supervisor and workplace safety—a bargainable subject; and the fact that a grievable subject may overlap on the edges with a nonbargainable subject does not eviscerate the grievability of the claim.

Furthermore, as the Authority correctly noted, *see Scott II* at 9, *reprinted in* J.A. 300, the Union possesses a substantial interest in information that will assist it in determining whether to proceed to arbitration.[1] If the Union decides that the action taken against the supervisor is adequate to address its concerns over workplace safety, then the grievance can be dropped. Such a determination cannot be made, however, without information detailing how the employer handled the situation. This is not to say that the Union has the right to dictate personnel actions affecting supervisors, or to second-guess management decisions on supervisory

---

1. In *NLRB v. Acme Indus. Co.,* the Supreme Court aptly noted that:

[a]rbitration can function properly only if the grievance procedures leading to it can sift out unmeritorious claims. For if all claims originally initiated as grievances had to be processed to arbitration, the system would be woefully overburdened. Yet, that is precisely what the respondent's restrictive view would require. It would force the union to take a grievance all the way through to arbitration without providing the opportunity to evaluate the merits of the claim. The expense of arbitration might be placed upon the union only for it to learn that the machines had been relegated to the junk heap. Nothing in federal labor law requires such a result.

385 U.S. 432, 438, 87 S.Ct. 565, 569, 17 L.Ed.2d 495 (1967) (internal footnotes omitted).

discipline. However, when unit employees have faced physical assault on the job, a Union surely is entitled to know how management has handled the problem in order to assess whether to pursue arbitration over an issue of workplace safety.

■ Scott AFB argues that, in its request for arbitration, the Union has sought a remedy that would define the terms of the supervisor's discipline, a matter beyond the scope of bargaining. This is beside the point. What is important here is that the Union has the right to information that is necessary to determine whether to proceed to arbitration in an attempt to ensure the workplace safety of unit employees. The fact that certain "remedies" sought may not be available to the Union in arbitration does not render an otherwise grievable claim not arbitrable. *See Marine Corps Logistics Support Base and Am. Fed'n of Gov't Employees,* 3 F.L.R.A. 397, 399 (1980). We need not address whether any remedy is even due the Union under the parties' agreement. Rather, we simply find that the Union's request to view the disputed disciplinary letter involves a clearly grievable subject—workplace safety—and, thus, the Authority's finding that the Union possesses a particularized need for the information is not unreasonable.

### 2. *Countervailing Interests*

In *Department of the Air Force,* this court instructed the Authority to determine whether countervailing interests outweighed the Union's interest in viewing the disputed letter. *See Department of the Air Force,* 956 F.2d at 1225. On the record at hand, we hold that the Authority was fully justified in finding that the countervailing interests do not defeat the Union's interest in disclosure of the letter.

In examining the interests weighing against disclosure, the Authority discounted Scott AFB's interest in maintaining confidentiality of its disciplinary records, noting that any resulting disrespect from employees toward the supervisor or any diminution of the supervisor's credibility was speculative. *See Scott II* at 10, *reprinted in* J.A. 301. Further, the Authority, while recognizing that the supervisor possesses a substantial personal interest in maintaining the privacy of his disciplinary records, found that the Union seeks disclosure of only one specific disciplinary action that was taken with respect to an incident of misconduct that is already common knowledge amongst workers at the commissary. *See id.* at 11, *reprinted in* J.A. 302. Finally, with respect to an interest in postponing disclosure of the letter until an arbitrator decides the grievability issue, the Authority noted that the Union's request for disclosure of the letter was clearly made in pursuit of a grievable subject. *See id.* at 12, *reprinted in* J.A. 303. Scott AFB simply disagrees with the Authority's weighing of the relevant factors, but this disagreement furnishes no basis upon which to grant a petition for review. We must defer to the Authority's judgment on these issues, for it is not unreasonable.

### B. *Privacy Act*

■ A further issue in this case is whether the Privacy Act prohibits disclosure of the disputed letter. We review the Authority's interpretation of the Privacy Act *de novo. See FLRA v. U.S. Dep't of Treasury,* 884 F.2d 1446, 1451 (D.C.Cir.1989). We find that, as the Union's request falls within the Act's "routine use" exception, the Privacy Act does not bar disclosure of the disciplinary letter.

The Privacy Act, 5 U.S.C. § 552a, ordinarily prohibits disclosure of personal information about federal employees without their consent. However, there are several exceptions to the Act's application. 5 U.S.C. §§ 552a(b)(3) and (e)(4) set forth the routine use exception to the Privacy Act and require that all agencies that maintain a system of records publish identified routine uses in the Federal Register. The Office of Personnel Management ("OPM") published notice of the system of records at issue in the instant case at 57 Fed.Reg. 35,698, 35,705 (1992). The OPM's routine use "j" authorizes

> disclos[ure of] information to officials of labor organizations recognized under 5 U.S.C. chapter 71 when relevant and necessary to their duties of exclusive representation concerning personnel policies,

practices, and matters affecting working conditions.

57 Fed.Reg. 35,706 (1992).

 OPM's interpretation of routine use "j" is entitled to "great deference" by this court, *see Department of Treasury,* 884 F.2d at 1451, and that interpretation makes it clear that the Union is entitled to disclosure of the disputed letter in this case. In a September 17, 1992, policy letter, OPM interpreted routine use "j," in pertinent part, as follows:

> Unions will often cite a generalized need for information about agency actions with respect to individual employees. For example, the union may ask for lists of employees who have been counseled or disciplined within a specific timeframe, stating that it needs the information in order to consider whether or not to file a grievance. Agencies must apply a two-step analysis in determining whether the requested information is releasable. First, the union must show that the information is "relevant" to carrying out its representational obligations. For example, a dispute may not be grievable under the parties' collective bargaining agreement and, if that is the case, information pertaining to it is not "relevant."
>
> Second, if the agency determines that the information is "relevant," it must also determine that the information is in fact "necessary." The union must show that it has a particularized need for the information in a form that identifies specific individuals, and that its information needs cannot be satisfied through less intrusive means, such as by releasing records with personally-identifying information deleted.

*See* Office of Personnel Management Federal Personnel Management Letter 711–164 at 3 (Sept. 17, 1992), *reprinted in* Brief for the Petitioner at addendum C.

 Ordinarily, the scope of the Privacy Act is not determined by reference to the commands of the Labor Statute. However, in this case, in accordance with OPM's interpretation of its routine use exception to the Privacy Act, whether the Union's request falls within the routine use "j" exception hinges on whether the Union's request is relevant and necessary to carry out its representational duties and, thus, on whether the claim is in pursuit of a grievable subject. As described above, because workplace safety is clearly grievable, the requested disciplinary letter is both relevant and necessary to the Union to carry out its representational duties and, thus, falls within OPM's routine use "j" exemption to the Privacy Act.

### C. *Mootness*

 Finally, petitioner asserts that, because the alleged assaults by the supervisor occurred ten years ago and the grievant in question has since retired from the commissary, this court should dismiss the case on prudential mootness grounds, *see Penthouse Int'l, Ltd. v. Meese,* 939 F.2d 1011, 1019–20 (D.C.Cir.1991). In other words, petitioner urges that the release of the disciplinary letter will do nothing today to help the union ensure a safe work environment for its bargaining unit employees. We reject petitioner's contention.

First, the Union, not the unit employee, decides whether and on what terms to proceed with arbitration. Therefore, the employee's retirement is not determinative of whether the Union has a viable claim to pursue in arbitration. Furthermore, in the instant case, the Union still possesses an interest in the workplace safety of its bargaining unit employees. Second, although the supervisor's objectionable behavior occurred ten years ago, the supervisor still works at the commissary. Therefore, the Union is entitled to consider whether the supervisor remains a threat to the workplace safety of the bargaining unit employees.

### III. Conclusion

For the reasons hereinabove indicated, the petition for review is denied and the cross-application for enforcement is granted.