**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LOCAL 2343, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

No. 97–1355.

United States Court of Appeals, District of Columbia Circuit.

Argued March 6, 1998.

Decided May 29, 1998.

**86**

Judith D. Galat argued the cause for petitioner. With her on the briefs was Mark D. Roth. Charles A. Hobbie entered an appearance.

David M. Smith, Solicitor, Federal Labor Relations Authority, argued the cause for respondent. With him on the brief was James F. Blandford, Attorney. William R. Tobey, Deputy Solicitor, and William E. Persina, Attorney, entered appearances.

Before: RANDOLPH, ROGERS and TATEL, Circuit Judges.

TATEL, Circuit Judge:

After a government employer refused to provide documents requested by a union in connection with a pending grievance, the Federal Labor Relations Authority dismissed the union's unfair labor practice complaint, finding that the union failed to articulate "particularized need" for the documents. Because the Authority reasonably applied the appropriate legal standard, we deny the union's petition for review.

I

Collective bargaining and labor relations in the federal government are governed by the Federal Service Labor–Management Relations Statute, Pub.L. No. 95–454, § 701, 92 Stat. 1191–1216 (1978) (codified as amended at 5 U.S.C. §§ 7101–7135 (1994 & Supp. II 1996)). That statute authorizes a labor organization accorded exclusive recognition for a unit of employees to act as the unit's exclusive representative, 5 U.S.C. § 7114(a)(1), and to participate in certain formal discussions between the employer and employees in the unit, *id.* § 7114(a)(2). The statute requires employers and exclusive representatives to "meet and negotiate in good faith for the purposes of arriving at a collective bargaining agreement." *Id.* § 7114(a)(4). Under the statute, collective bargaining agreements must establish procedures for the settlement of grievances, *id.* § 7121(a)(1), including arbitration, *id.* § 7121(b)(1)(C)(iii). Central to this case, section 7114(b)(4) of the statute requires agencies, as part of their obligation to negotiate in good faith, to provide exclusive representatives with information upon request:

(A) which is normally maintained by the agency in the regular course of business;

(B) which is reasonably available and necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining; and

(C) which does not constitute guidance, advice, counsel, or training provided for management officials or supervi-

sors, relating to collective bargaining. . . .

*Id.* § 7114(b)(4)(A)-(C).

 Interpreting section 7114(b)(4)(B), this court requires that unions demonstrate "particularized need" for information they seek. *Department of the Air Force, Scott Air Force Base v. FLRA,* 104 F.3d 1396, 1400 (D.C.Cir.1997) (citing *NLRB v. FLRA,* 952 F.2d 523, 531–32 (D.C.Cir.1992)). In response to a union request for information, the employer must balance the union's particularized need against its own countervailing anti-disclosure interest. *U.S. Dep't of Justice, Bureau of Prisons, Allenwood Fed. Prison Camp v. FLRA,* 988 F.2d 1267, 1270 (D.C.Cir.1993). Applying the "particularized need" standard, the Authority requires a union to "articulat[e], with specificity, why it needs the requested information, including the uses to which the union will put the information and the connection between those uses and the union's representational responsibilities under the Statute." *IRS, Wash., D.C., and IRS, Kansas City Serv. Ctr., Kansas City, Mo.,* 50 F.L.R.A. 661, 669 (1995). Because enabling the employer to weigh its privacy interests against the union's disclosure interests is one of the purposes of the articulation requirement, the union ordinarily may not rely upon conclusory assertions of need. *See Allenwood Fed. Prison Camp,* 988 F.2d at 1271; *IRS, Kansas City,* 50 F.L.R.A. at 670.

This case arises from a February 1993 disturbance in a federal penitentiary in Marion, Illinois. Immediately after correctional officers released an inmate named Baptiste from segregated confinement into the prison recreation area, Baptiste "squared off" to fight another inmate, causing several officers—one of whom was injured in the incident—to subdue Baptiste and return him to the segregation unit. Afterwards, a supervisor accused Officer Aubrey Francis, one of the officers who removed Baptiste, of using excessive force. When the matter was referred to the Bureau of Prison's Office of Internal Affairs, Francis was placed on "home duty" for the duration of the investigation.

The American Federation of Government Employees, AFL–CIO, Local 2343 filed a grievance alleging that by releasing an inmate with known violent tendencies into the general prison population, the penitentiary violated the collective bargaining agreement's health and safety provision. Seeking a complete investigation of all supervisors involved in the incident, the grievance accused the penitentiary of: ·

> a systematic and calculated effort on the part of the above mentioned supervisors to violate the civil rights of these two inmates and force staff into a position of having to fight an inmate when there was no need. Because of this effort on these individuals [sic] part one Officer is at home on "home duty" because of a memo written by a supervisor and one Officer is hurt and may never work again trying to transport Baptiste back to 1 Unit.

Asserting that it had legitimate reasons for releasing Baptiste, the penitentiary denied the grievance. The Union then invoked the collective bargaining agreement's arbitration clause.

Preparing for arbitration, the Union asked the penitentiary for all materials in its possession relating to the Baptiste incident, saying only that it needed the information "to prepare the case for arbitration." When the penitentiary failed to respond, the Union made a second request, this time invoking section 7114(b)(4) and stating that it needed the information to "effectively carry out its representational obligation in processing of a grievance (in this case the arbitrational hearing)" because "[m]anagement has this information to present during the arbitration and the Union needs this same information so it may effectively present its case." The penitentiary denied the request, concluding that the Union had failed to articulate particularized need since "none of the allegations of staff misconduct were substantiated by the investigation report you are requesting." The Union then filed an unfair labor practice charge with the Authority.

Reviewing *in camera* two OIA reports—one concerning the Francis investigation and the other an allegation that a correctional officer made a false statement during the

investigation—the administrative law judge found that because both reports included information supporting the Union's claim that correctional officers knew of Baptiste's violent tendencies, the information was "necessary" for purposes of section 7114(b)(4)(B). Because the ALJ also found that the Union failed to establish "particularized need" for the documents, however, he concluded that the penitentiary's refusal to furnish them did not violate the statute.

Over the dissent of one member, the Authority adopted the ALJ's conclusion. Characterizing as "conclusory" the Union's claim that it "needed the information to prepare for arbitration of its previously filed grievance," the Authority found that the Union failed to articulate particularized need for the documents. *U.S. Dep't of Justice, Fed. Bureau of Prisons, U.S. Penitentiary, Marion, Ill.,* 52 F.L.R.A. 1195, 1202 (1997). The Authority then examined the grievance itself to decide whether, notwithstanding the Union's failure to articulate particularized need, the penitentiary could have made a reasoned judgment about its obligation to disclose the information. Acknowledging that the Union claimed at the hearing before the ALJ that it was grieving both whether Francis was wrongly placed on home duty and whether correctional officials created a safety risk by releasing Baptiste, the Authority concluded, based on its reading of the original grievance—the only document the agency had before it when it rejected the Union's request—that the home duty issue "was not one that the [penitentiary] had reason to know was part of the arbitration for which the Union requested information." *Id.* at 1203. Also finding that "the Union never explained to the [penitentiary] why it needed the information developed by the OIA investigation of [Francis] in order to show that the inmate's release adversely affected health and safety," *id.,* the Authority ruled that the penitentiary had not committed an unfair labor practice.

■ The Union now petitions for review of the Authority's decision. Reviewing Authority orders in accordance with section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706 (1994); *see id.* § 7123(c), we uphold its determinations unless they are "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A). Our review is "narrow." *See Overseas Educ. Ass'n, Inc. v. FLRA,* 858 F.2d 769, 771 (D.C.Cir.1988). As long as the Authority's factual findings are supported by "substantial evidence on the record considered as a whole," they are "conclusive." 5 U.S.C. § 7123(c).

II

■ Because the Authority's decision turned in no small part upon its interpretation of the scope of the Union's grievance, we must first consider whether the Authority erred in finding that the grievance presented only the health and safety issue and not whether Francis was wrongly placed on home duty. Although the parties disagree about the proper standard of review—the Union argues that our review is *de novo* while the Authority urges us to review for substantial evidence—we need not resolve that issue because we conclude that under any standard of review the Authority got it right.

From the plain language of the grievance, we think it unmistakable that the Union complained only about the safety consequences of releasing Baptiste, not about placing Officer Francis on home duty. Not only does the entire grievance focus on the decision to release Baptiste, but the grievance never alleges that placing Francis on home duty was improper. It mentioned Francis only to illustrate that Baptiste's release had unfortunate consequences. To be sure, the Union later claimed at the hearing before the ALJ that it was grieving the Francis issue. At the time the penitentiary decided against delivering the documents, however, it had before it only the Union's written grievance. It therefore had notice only of the Union's intent to grieve the health and safety issue.

The question, then, is whether the Authority erred by finding that the Union failed sufficiently to articulate the connection between the information it wanted and its interest in grieving the health and safety issue. Conceding that it told the penitentiary no more than that it needed the information to prepare for arbitration, the Union argues

that this suffices to satisfy the particularized need test because the connection between the information and the grievance is "self-evident." There may well be cases where the connection between the information a union seeks and the grievance is so clear that the union's need is self-evident. That might have been the case here if the reports at issue were entitled "Health and Safety Effects of the Penitentiary's Decision to Release Baptiste into the General Prison Population." But the reports in this case concerned events at least one step removed from the decision to release Baptiste. The reports related only to Officer Francis's activities on the day of the incident and an alleged false statement made in connection with the Francis investigation. Under these circumstances, the Authority reasonably concluded that the Union's need for the documents was not self-evident. The Authority requires unions to articulate particularized need to ensure that in cases like this, where the documents sought are not obviously relevant to the subject of the grievance, the employer has sufficient information about exactly why the union needs the information in order to weigh the union's interest against any countervailing interest the employer might have in privacy and non-disclosure. Because the reports the Union wants in this case could contain all sorts of material—some of which the Union may need but some of which it may not—merely stating that it needs the reports to prepare for arbitration does not give the employer sufficient information to weigh the competing interests in any meaningful way.

Relying on *NLRB v. FLRA* and *Scott*, the Union argues that where, as here, the requested documents discuss a specific incident about which the Union has filed a grievance, particularized need is automatically established. The Union points to our statements in *NLRB* that a union "may" meet the particularized need standard when it has a grievable complaint covering information regarding agency action against an employee and that "disclosure normally should obtain" if a duty imposed by statute or contract with respect to predecisional deliberation "ground[s] a grievable claim of right in the employee or union," *NLRB v. FLRA*, 952 F.2d at 532–33.

Not only does nothing in *NLRB* hold that the existence of a grievance always suffices to establish particularized need, but in subsequent decisions, both this court and the Authority required unions to "articulate" particularized need. *See Allenwood Fed. Prison Camp*, 988 F.2d at 1271; *IRS, Kansas City*, 50 F.L.R.A. at 669–70. The articulation requirement gives content to the "particularized" part of the test by requiring not just that there be a need—a standard that unions probably could meet whenever seeking information in connection with a grievance—but also that unions explain with some specificity why they need the information. Nor does *Scott* support the Union's argument. Seeking a disciplinary letter issued by the base to a supervisor who allegedly struck an employee, the union in that case went well beyond simply saying that the letter concerned the events involved in the grievance. It articulated a specific reason for needing the letter—to know whether (and if so how) the base had already disciplined the supervisor so it could determine whether to pursue arbitration. *See Scott*, 104 F.3d at 1400–01; *Department of the Air Force, Scott Air Force Base, Ill.*, 51 F.L.R.A. 675, 677 (1995); *see also Department of Justice, INS, N. Region, Twin Cities, Minn. v. FLRA*, No. 97–1388, slip op. at 9, 1998 WL 271092 (D.C.Cir. May 29, 1998) (finding that union met need test by asserting it needed documents to compare discipline that employee had received with discipline received by other employees committing similar offenses).

The Union argues that the Authority's application of the particularized need test requires it to predict the contents of documents to which it has not yet had access, as well as to reveal its strategy for the upcoming arbitration. We share this concern. The Authority may not, as it clearly recognizes, *see IRS, Kansas City*, 50 F.L.R.A. at 670 n.13, apply the particularized need test to ask unions the impossible—to describe documents they have not seen—or to require unions to reveal so much about their need for the information that employers will enjoy an unfair advantage at arbitration. In this case, the Authority did neither. As we read the Authority's decision, the Union could have

satisfied its obligation to articulate particularized need merely by saying that it needed the information to determine whether correctional officers knew about Baptiste's violent tendencies. Such a statement would neither require knowledge of the documents nor reveal strategic information.

We recognize that the particularized need test asks unions to walk a fine line between saying too little and saying too much. While we emphasize here that the Authority must not require unions to say too much, we conclude that the Authority committed no error by finding that, in this case, the Union said too little.

The petition for review is denied.

*So ordered.*