United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued March 6, 1998 Decided May 29, 1998

 No. 97-1355

 American Federation of Government Employees, Local 2343, 

 Petitioner

 v.

 Federal Labor Relations Authority, 

 Respondent

 On Petition for Review of an Order of the 

 Federal Labor Relations Authority

 Judith D. Galat argued the cause for petitioner. With her 
on the briefs was Mark D. Roth. Charles A. Hobbie entered 
an appearance.

 David M. Smith, Solicitor, Federal Labor Relations Au-
thority, argued the cause for respondent. With him on the 
brief was James F. Blandford, Attorney. William R. Tobey, 


Deputy Solicitor, and William E. Persina, Attorney, entered 
appearances.

 Before: Randolph, Rogers and Tatel, Circuit Judges.

 Opinion for the Court filed by Circuit Judge Tatel.

 Tatel, Circuit Judge: After a government employer re-
fused to provide documents requested by a union in connec-
tion with a pending grievance, the Federal Labor Relations 
Authority dismissed the union's unfair labor practice com-
plaint, finding that the union failed to articulate "particular-
ized need" for the documents. Because the Authority reason-
ably applied the appropriate legal standard, we deny the 
union's petition for review.

 I

 Collective bargaining and labor relations in the federal 
government are governed by the Federal Service Labor-
Management Relations Statute, Pub. L. No. 95-454, s 701, 92 
Stat. 1191-1216 (1978) (codified as amended at 5 U.S.C. 
ss 7101-7135 (1994 & Supp. II 1996)). That statute autho-
rizes a labor organization accorded exclusive recognition for a 
unit of employees to act as the unit's exclusive representative, 
5 U.S.C. s 7114(a)(1), and to participate in certain formal 
discussions between the employer and employees in the unit, 
id. s 7114(a)(2). The statute requires employers and exclu-
sive representatives to "meet and negotiate in good faith for 
the purposes of arriving at a collective bargaining agree-
ment." Id. s 7114(a)(4). Under the statute, collective bar-
gaining agreements must establish procedures for the settle-
ment of grievances, id. s 7121(a)(1), including arbitration, id. 
s 7121(b)(1)(C)(iii). Central to this case, section 7114(b)(4) of 
the statute requires agencies, as part of their obligation to 
negotiate in good faith, to provide exclusive representatives 
upon request with information:

(A)which is normally maintained by the agency in the 
 regular course of business;

(B)which is reasonably available and necessary for full 
 and proper discussion, understanding, and negotia-


 tion of subjects within the scope of collective bar-
 gaining; and

(C)which does not constitute guidance, advice, counsel, 
 or training provided for management officials or 
 supervisors, relating to collective bargaining....

Id. s 7114(b)(4)(A)-(C).

 Interpreting section 7114(b)(4)(B), this court requires that 
unions demonstrate "particularized need" for information 
they seek. Department of the Air Force, Scott Air Force 
Base v. FLRA, 104 F.3d 1396, 1400 (D.C. Cir. 1997) (citing 
NLRB v. FLRA, 952 F.2d 523, 531-32 (D.C. Cir. 1992)). In 
response to a union request for information, we require the 
employer to balance the union's particularized need against 
its own countervailing anti-disclosure interest. U.S. Dep't of 
Justice, Bureau of Prisons, Allenwood Fed. Prison Camp v. 
FLRA, 988 F.2d 1267, 1270 (D.C. Cir. 1993). Applying the 
"particularized need" standard, the Authority requires a un-
ion to "articulat[e], with specificity, why it needs the request-
ed information, including the uses to which the union will put 
the information and the connection between those uses and 
the union's representational responsibilities under the Stat-
ute." IRS, Wash., D.C., and IRS, Kansas City Serv. Ctr., 
Kansas City, Mo., 50 F.L.R.A. 661, 669 (1995). Because 
enabling the employer to weigh its privacy interests against 
the union's disclosure interests is one of the purposes of the 
articulation requirement, the union ordinarily may not rely 
upon conclusory assertions of need. See Allenwood Fed. 
Prison Camp, 988 F.2d at 1271; IRS, Kansas City, 50 
F.L.R.A. at 670.

 This case arises from a February 1993 disturbance in a 
federal penitentiary in Marion, Illinois. Immediately after 
correctional officers released an inmate named Baptiste from 
segregated confinement into the prison recreation area, Bap-
tiste "squared off" to fight another inmate, causing several 
officers--one of whom was injured in the incident--to subdue 
Baptiste and return him to the segregation unit. Afterwards, 
a supervisor accused Officer Aubrey Francis, one of the 
officers who removed Baptiste, of using excessive force. 


When the matter was referred to the Bureau of Prison's 
Office of Internal Affairs, Francis was placed on "home duty" 
for the duration of the investigation.

 The American Federation of Government Employees, 
AFL-CIO, Local 2343 filed a grievance alleging that by 
releasing an inmate with known violent tendencies into the 
general prison population, the penitentiary violated the collec-
tive bargaining agreement's health and safety provision. 
Seeking a complete investigation of all supervisors involved in 
the incident, the grievance accused the penitentiary of:

 a systematic and calculated effort on the part of the 
 above mentioned supervisors to violate the civil rights of 
 these two inmates and force staff into a position of 
 having to fight an inmate when there was no need. 
 Because of this effort on these individuals [sic] part one 
 Officer is at home on "home duty" because of a memo 
 written by a supervisor and one Officer is hurt and may 
 never work again trying to transport Baptiste back to 1 
 Unit.

Asserting that it had legitimate reasons for releasing Bap-
tiste, the penitentiary denied the grievance. The Union then 
invoked the collective bargaining agreement's arbitration 
clause.

 Preparing for arbitration, the Union asked the penitentiary 
for all materials in its possession relating to the Baptiste 
incident, saying only that it needed the information "to pre-
pare the case for arbitration." When the penitentiary failed 
to respond, the Union made a second request, this time 
invoking section 7114(b)(4) and stating that it needed the 
information to "effectively carry out its representational obli-
gation in processing of a grievance (in this case the arbitra-
tional hearing)" because "[m]anagement has this information 
to present during the arbitration and the Union needs this 
same information so it may effectively present its case." The 
penitentiary denied the request, concluding that the Union 
had failed to articulate particularized need since "none of the 
allegations of staff misconduct were substantiated by the 


investigation report you are requesting." The Union then 
filed an unfair labor practice charge with the Authority.

 Reviewing in camera two OIA reports--one concerning the 
Francis investigation and the other an allegation that a 
correctional officer made a false statement during the investi-
gation--the administrative law judge found that because both 
reports included information supporting the Union's claim 
that correctional officers knew of Baptiste's violent tenden-
cies, the information was "necessary" for purposes of section 
7114(b)(4)(B). Because the ALJ also found that the Union 
failed to establish "particularized need" for the documents, 
however, he concluded that the penitentiary's refusal to fur-
nish them did not violate the statute.

 Over the dissent of one member, the Authority adopted the 
ALJ's conclusion. Characterizing as "conclusory" the Union's 
claim that it "needed the information to prepare for arbitra-
tion of its previously filed grievance," the Authority found 
that the Union failed to articulate particularized need for the 
documents. U.S. Dep't of Justice, Fed. Bureau of Prisons, 
U.S. Penitentiary, Marion, Ill., 52 F.L.R.A. 1195, 1202 
(1997). The Authority then examined the grievance itself to 
decide whether, notwithstanding the Union's failure to articu-
late particularized need, the penitentiary could have made a 
reasoned judgment about its obligation to disclose the infor-
mation. Acknowledging that the Union claimed at the hear-
ing before the ALJ that it was grieving both whether Francis 
was wrongly placed on home duty and whether correctional 
officials created a safety risk by releasing Baptiste, the 
Authority concluded, based on its reading of the original 
grievance--the only document the agency had before it when 
it rejected the Union's request--that the home duty issue 
"was not one that the [penitentiary] had reason to know was 
part of the arbitration for which the Union requested infor-
mation." Id. at 1203. Also finding that "the Union never 
explained to the [penitentiary] why it needed the information 
developed by the OIA investigation of [Francis] in order to 
show that the inmate's release adversely affected health and 
safety," id., the Authority ruled that the penitentiary had not 
committed an unfair labor practice.


 The Union now petitions for review of the Authority's 
decision. Reviewing Authority orders in accordance with 
section 10(e) of the Administrative Procedure Act, 5 U.S.C. 
s 706 (1994); see id. s 7123(c), we uphold its determinations 
unless they are "arbitrary, capricious, an abuse of discretion, 
or otherwise not in accordance with law." Id. s 706(2)(A). 
Our review is "narrow." See Overseas Educ. Ass'n, Inc. v. 
FLRA, 858 F.2d 769, 771 (D.C. Cir. 1988). As long as the 
Authority's factual findings are supported by "substantial 
evidence on the record considered as a whole," they are 
"conclusive." 5 U.S.C. s 7123(c).

 II

 Because the Authority's decision turned in no small part 
upon its interpretation of the scope of the Union's grievance, 
we must first consider whether the Authority erred in finding 
that the grievance presented only the health and safety issue 
and not whether Francis was wrongly placed on home duty. 
Although the parties disagree about the proper standard of 
review--the Union argues that our review is de novo while 
the Authority urges us to review for substantial evidence--we 
need not resolve that issue because we conclude that under 
any standard of review the Authority got it right.

 From the plain language of the grievance, we think it 
unmistakable that the Union complained only about the safety 
consequences of releasing Baptiste, not about placing Officer 
Francis on home duty. Not only does the entire grievance 
focus on the decision to release Baptiste, but the grievance 
never alleges that placing Francis on home duty was improp-
er. It mentioned Francis only to illustrate that Baptiste's 
release had unfortunate consequences. To be sure, the Union 
later claimed at the hearing before the ALJ that it was 
grieving the Francis issue. At the time the penitentiary 
decided against delivering the documents, however, it had 
before it only the Union's written grievance. It therefore had 
notice only of the Union's intent to grieve the health and 
safety issue.


 The question, then, is whether the Authority erred by 
finding that the Union failed sufficiently to articulate the 
connection between the information it wanted and its interest 
in grieving the health and safety issue. Conceding that it 
told the penitentiary no more than that it needed the informa-
tion to prepare for arbitration, the Union argues that this 
suffices to satisfy the particularized need test because the 
connection between the information and the grievance is 
"self-evident." There may well be cases where the connec-
tion between the information a union seeks and the grievance 
is so clear that the union's need is self-evident. That might 
have been the case here if the reports at issue were entitled 
"Health and Safety Effects of the Penitentiary's Decision to 
Release Baptiste into the General Prison Population." But 
the reports in this case concerned events at least one step 
removed from the decision to release Baptiste. The reports 
related only to Officer Francis's activities on the day of the 
incident and an alleged false statement made in connection 
with the Francis investigation. Under these circumstances, 
the Authority reasonably concluded that the Union's need for 
the documents was not self-evident. The Authority requires 
unions to articulate particularized need to ensure that in 
cases like this, where the documents sought are not obviously 
relevant to the subject of the grievance, the employer has 
sufficient information about exactly why the union needs the 
information in order to weigh the union's interest against any 
countervailing interest the employer might have in privacy 
and non-disclosure. Because the reports the Union wants in 
this case could contain all sorts of material--some of which 
the Union may need but some of which it may not--merely 
stating that it needs the reports to prepare for arbitration 
does not give the employer sufficient information to weigh the 
competing interests in any meaningful way.

 Relying on NLRB v. FLRA and Scott, the Union argues 
that where, as here, the requested documents discuss a 
specific incident about which the Union has filed a grievance, 
particularized need is automatically established. The Union 
points to our statements in NLRB that a union "may" meet 
the particularized need standard when it has a grievable 


complaint covering information regarding agency action 
against an employee and that "disclosure normally should 
obtain" if a duty imposed by statute or contract with respect 
to predecisional deliberation "ground[s] a grievable claim of 
right in the employee or union," NLRB v. FLRA, 952 F.2d at 
532-33. Not only does nothing in NLRB hold that the 
existence of a grievance always suffices to establish particu-
larized need, but in subsequent decisions, both this court and 
the Authority required unions to "articulate" particularized 
need. See Allenwood Fed. Prison Camp, 988 F.2d at 1271; 
IRS, Kansas City, 50 F.L.R.A. at 669-70. The articulation 
requirement gives content to the "particularized" part of the 
test by requiring not just that there be a need--a standard 
that unions probably could meet whenever seeking informa-
tion in connection with a grievance--but also that unions 
explain with some specificity why they need the information. 
Nor does Scott support the Union's argument. Seeking a 
disciplinary letter issued by the base to a supervisor who 
allegedly struck an employee, the union in that case went well 
beyond simply saying that the letter concerned the events 
involved in the grievance. It articulated a specific reason for 
needing the letter--to know whether (and if so how) the base 
had already disciplined the supervisor so it could determine 
whether to pursue arbitration. See Scott, 104 F.3d at 1400-
01; Department of the Air Force, Scott Air Force Base, Ill., 
51 F.L.R.A. 675, 677 (1995); see also Department of Justice, 
INS, N. Region, Twin Cities, Minn. v. FLRA, No. 97-1388, 
slip op. at 9 (D.C. Cir. May 29, 1998) (finding that union met 
need test by asserting it needed documents to compare 
discipline that employee had received with discipline received 
by other employees committing similar offenses).

 The Union argues that the Authority's application of the 
particularized need test requires it to predict the contents of 
documents to which it has not yet had access, as well as to 
reveal its strategy for the upcoming arbitration. We share 
this concern. The Authority may not, as it clearly recognizes, 
see IRS, Kansas City, 50 F.L.R.A. at 670 n.13, apply the 
particularized need test to ask unions the impossible--to 
describe documents they have not seen--or to require unions 


to reveal so much about their need for the information that 
employers will enjoy an unfair advantage at arbitration. In 
this case, the Authority did neither. As we read the Authori-
ty's decision, the Union could have satisfied its obligation to 
articulate particularized need merely by saying that it needed 
the information to determine whether correctional officers 
knew about Baptiste's violent tendencies. Such a statement 
would neither require knowledge of the documents nor reveal 
strategic information.

 We recognize that the particularized need test asks unions 
to walk a fine line between saying too little and saying too 
much. While we emphasize here that the Authority must not 
require unions to say too much, we conclude that the Authori-
ty committed no error by finding that, in this case, the Union 
said too little.

 The petition for review is denied.

So ordered.